969 F.2d 521
 STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, Plaintiff-Appellee,
v.
FIRST NATIONAL BANK OF MADISON COUNTY, as Guardian of the
Estate of Stacy L. Murdock, and James Murdock,
Defendants-Appellants.
 No. 91-2640.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 14, 1992.
Decided July 30, 1992.
Rehearing and Rehearing En Banc
Denied Sept. 23, 1992.
 
 Patricia McCrory (argued), Michael V. Gooch, John S. Beeman, Harrison & Moberly, Indianapolis, Ind., for plaintiff-appellee.
 Max Howard, Anderson, Ind., Thomas J. Young, William N. Riley (argued), Young & Riley, Indianapolis, Ind., for defendants-appellants.
 Before RIPPLE and MANION, Circuit Judges, and WILL, Senior District Judge.*
 MANION, Circuit Judge.
 
 
 1
 In 1981, Lawrence Bayer purchased a Personal Liability Umbrella Policy from State Farm Fire and Casualty Company. The original policy was for one year but the policy contained a provision automatically renewing the policy for each succeeding year.
 
 
 2
 The policy contained several exclusions, including a "business operations" exclusion. That exclusion provided:
 
 We will not provide coverage:
 
 3
 6. For a loss caused by your business operations unless underlying insurance listed on the Declarations Page provides coverage for the loss. This exclusion will not apply to your private automobile or watercraft for incidental business use if:
 
 
 4
 a. your underlying policy applies to the loss, and;
 
 
 5
 b. the automobile or watercraft is not for hire.
 
 
 6
 The policy's declarations page did not list any specific underlying insurance policies. Instead, the declarations page set out four categories of underlying coverage--"Automobile Liability," "Recreational Motor Vehicle Liability," "Personal Liability," and "Watercraft Liability"--and set out the minimum amount of coverage required to be provided under each category.
 
 
 7
 Some time after Bayer purchased the umbrella policy, he acquired a Kenworth tractor-trailer to use in his occupation as a truck driver. On February 11, 1988, Bayer was hauling a load to Georgia in the Kenworth tractor-trailer. While southbound on Interstate 69 in Indiana, Bayer's truck collided with a car driven by Stacy Murdock. Murdock was seriously injured in the accident. Her passenger, Karen Skinner, died at the scene.
 
 
 8
 The administrators of Skinner's estate and the guardian of Murdock's estate (Murdock apparently having been rendered incompetent by the injuries she suffered) sued Bayer in state court. State Farm subsequently filed an action in federal court against Bayer and the estates seeking a declaration that it had no duty under the personal umbrella policy to indemnify Bayer in the state court action. After both sides filed motions, the district court granted summary judgment for State Farm. The estates filed a motion under Fed.R.Civ.P. 59 to amend the judgment. The district court denied that motion, and the estates now appeal.
 
 
 9
 The tractor-trailer was covered by a separate $5 million liability insurance policy. In its original order granting summary judgment, the district court held that the business operations exclusion applied to losses caused by the tractor-trailer because the underlying insurance was not "listed on the Declarations Page." The court correctly refused to say that the specific policy was not listed, since the declarations page lists only types of insurance, not specific policies. The estates argued that the policy covering the tractor-trailer fell into the category of "automobile liability" insurance. The court, however, stated that the policy covering the tractor-trailer was not "automobile liability" insurance because "[a] reasonable person would not consider the Kenworth tractor-trailer to be an automobile."
 
 
 10
 This reasoning is not persuasive given the umbrella policy's definition of "automobile" as "a land motor vehicle, trailer, or semi-trailer." By this definition, the tractor-trailer was an "automobile" under the umbrella policy. State Farm protests that the policy covering the tractor-trailer was a commercial lines policy, which is completely different from an automobile liability policy. That may be true in general, although State Farm offers no authority for its assertion. But our job is to interpret the umbrella policy as the language in it is used, not to search for some hidden meaning in that language based on unsupported assertions about what those words might mean in some other context. See Orkin Exterminating Co. v. Walters, 466 N.E.2d 55, 60 (Ind.App.1984) (when a matter is expressly covered by a written instrument, the instrument's unambiguous provisions control and the parties' intent will be determined from within the instrument's "four corners"). A policy that covers liability caused by the tractor-trailer, an "automobile" under the umbrella policy's definition, is a policy covering automobile liability. It is therefore an "automobile liability" policy under the terms of the umbrella policy. Losses caused by the tractor-trailer are therefore covered by insurance "listed on the Declarations Page."
 
 
 11
 In its order denying the estates' Rule 59 motion, the district court accepted the estates' argument that the tractor-trailer was an "automobile" as defined by the umbrella policy. But the court did not accept the estates' conclusion that the umbrella policy covered the loss in this case. The court pointed out that Bayer had not listed the tractor-trailer on his insurance application (which was no surprise since Bayer did not own the tractor-trailer when he purchased the policy). According to the court, State Farm had a right to rely on the information Bayer provided, and Bayer had a duty to supplement that information when it materially changed. The court thought the estates' interpretation of the policy unreasonable, finding that "[i]t is implausible that State Farm would bargain to provide umbrella insurance without knowledge of the nature of the motor vehicle covered. One could not reasonably expect secret commercial trucking activities to be covered by the umbrella policy."
 
 
 12
 State Farm trumpets this argument in its brief, but this argument, which is not based on any particular language in the policy, is no more persuasive than the argument that the tractor-trailer was not an "automobile." While a material misstatement in an insurance application may be grounds for denying coverage, State Farm Mutual Automobile Ins. Co. v. Price, 181 Ind.App. 258, 396 N.E.2d 134, 136 (1979), the district court cited no authority for its statement that Bayer was obliged to inform State Farm of changed conditions. Nothing in the policy placed any duty on Bayer to inform State Farm when he purchased a new motor vehicle, whether it be for business or pleasure. Since the policy imposed other specific notification duties on Bayer--namely, the duty to notify State Farm of any accident, or any claim or suit against him--the policy's silence about any duty to inform State Farm about acquiring a new automobile reinforces the conclusion that the policy imposes no such duty.
 
 
 13
 Besides some duty to give notice, the court's reasoning was also premised on the notion that the policy covered only vehicles that Bayer owned at the time he completed his application and that were disclosed by him in the application. But this notion has no basis in the policy's language either. In fact, the policy provided for automatic renewal. Because conditions change over time, the fact that the policy provided for automatic renewal, that is, renewal without reapplication, indicates that the policy contemplated changing conditions such as the acquisition of new vehicles.
 
 
 14
 State Farm drafted the umbrella policy, and it could easily have avoided the problems it now faces by providing in the policy that the policy would cover new activities or vehicles only if Bayer informed State Farm of those new risks. It also could actually have listed the underlying insurance policies on the declarations page, which would effectively have placed the onus on Bayer to inform State Farm of new vehicles and the insurance policies covering them. State Farm did not take these simple steps, however, and therefore must fall back on arguments based on speculation about the policy's "intent" that is divorced from the policy's language.
 
 
 15
 Nonetheless, although we are not persuaded by the same reasoning that persuaded the district court to enter summary judgment, State Farm has advanced another reason on appeal that persuades us that the judgment was correct. As we noted earlier, the business operations exclusion stated that it did "not apply to your private automobile ... for incidental business use if: (a) your underlying policy applies to the loss, and; (b) the automobile ... is not for hire." Bayer's tractor-trailer was not a personal automobile, and the tractor-trailer was "for hire." According to State Farm, this excludes the tractor-trailer from coverage under the policy.
 
 
 16
 State Farm, in essence, reads the business operations exclusion as excluding from coverage all vehicles used for business use except personal automobiles that are not for hire and are used only incidentally for a business purpose. Thus, for example, under State Farm's reading the policy would cover losses caused by an accident while the insured is using his car to run an errand for his employer; however, the policy would not cover accidents occurring from activities such as a taxi service or trucking.
 
 
 17
 The estates, on the other hand, argue that the "private automobile" language of the business operation exclusion is a separate exception to that exclusion. Under the estates' reading, the policy covers all losses resulting from business uses of non-private automobiles (such as taxis or trucks for hire) so long as underlying insurance covers those losses. However, the umbrella policy covers losses resulting from the business use of a private automobile only if the private automobile is not for hire.
 
 
 18
 Consistent with other terms in the policy, the business operations exclusion is not written as clearly as it could be. State Farm could have drafted the exclusion in terms that would leave no doubt that the policy would not in any circumstances cover such things as a taxi fleet or a semi-trailer. But despite this, we agree with State Farm that the "private automobile" language in the business operations exclusion excludes the loss in this case from coverage under the policy. The policy was titled as a "Personal Liability Umbrella Policy." While certain provisions may belie this title and extend coverage to risks that are more properly characterized as business rather than personal risks, the title at least implies that the policy's primary purpose is to cover personal risks. State Farm's reading of the "private automobile" language in the business exclusion is consistent with this connotation. One would expect a personal umbrella policy to give more protection to personal risks than to business risks. One would also expect a significant premium increase if business risks were included in the coverage. Yet, under the estates' reading of the exclusion, the policy provides almost limitless protection for regular business operations involving use of some types of automobiles, such as trucking or taxi service, while sharply limiting protection for business use of a private automobile. This makes little sense in a policy designed primarily to cover risks from personal activities. For this reason, the district court's judgment is
 
 
 19
 AFFIRMED.
 
 
 20
 WILL, Senior District Judge, dissenting.
 
 
 21
 I agree that the policy covering Bayer's tractor-trailer is an "automobile liability" policy based on State Farm's own definition of "automobile." I also agree that State Farm has cited nothing in its policy or any other authority which imposes a duty on the insured to notify it of the purchase of an additional vehicle. However, I cannot read the policy's business operations exclusion to have any application in this case.
 
 
 22
 The first sentence of policy's sixth exclusion says that State Farm will not provide coverage "for a loss caused by your business operations unless underlying insurance listed on the Declarations Page provides coverage for the loss." That is the business exclusion. Business use not covered by policies listed on the declarations page are excluded from umbrella coverage. The majority agrees that the "Automobile Liability" coverage listed on the declarations page does cover the loss, since a tractor-trailer is, under the policy, an "automobile."
 
 
 23
 The next sentence begins, "This exclusion ...," which refers to the exclusion of business use not covered by policies on the declarations page. The policy provides that "This exclusion will not apply to your private automobile ... for incidental business use if: a. your underlying policy applies to the loss and; b. the automobile ... is not for hire." So, in addition to providing umbrella coverage for business operations covered by underlying insurance, the policy also will cover business use of a private automobile if the private automobile is covered by underlying insurance and is not for hire. Bayer was not driving a private automobile for business use, he was engaged in business operations with a business vehicle which was covered by the underlying insurance.
 
 
 24
 The most logical reading of this paragraph is that the policy will cover business operations if the business operations are covered in a declared policy-and/or-the business use of a private automobile if this use is merely incidental. That the business use is not incidental does not by itself mean that the umbrella policy does not kick in, because the business use could be, and here is, covered under a policy listed on the declarations page.
 
 
 25
 The majority states that under this reading of the exclusion the policy would provide "almost limitless protection for regular business operations involving use of some types of automobiles, such as trucking or taxi service, while sharply limiting protection for business use of a private automobile." But umbrella coverage is only provided for those business operations that are covered by other policies listed on the declarations page. If this is "almost limitless" it is because of State Farm's own broad definitions. Moreover, there is no disproportionate limit on the business use of private automobiles. The only restriction is that the use must be incidental and be covered by underlying insurance, as must all vehicle use to get umbrella protection. Non-incidental business use of a private automobile would also be covered if the business use were covered by underlying insurance listed on the declarations page. "Business operations" is not confined to "business vehicles."
 
 
 26
 The majority correctly states that State Farm "could easily have avoided the problems it now faces." It did not. I therefore respectfully dissent.
 
 
 
 *
 Hon. Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation