ALLSTATE INSURANCE COMPANY v KEILLOR
(AFTER REMAND)

Docket No. 98957. Argued May 3, 1995 (Calendar No. 11). Decided
August 22, 1995.

Allstate Insurance Company brought an action in the Genesee
Circuit Court against Daniel Hayes, William Keillor, as per-
sonal representative of the estate of Susan Keillor, deceased,
and others, seeking a declaration that a homeowner's policy
issued to Daniel Hayes' father, with whom Daniel resided, did
not provide Daniel liability coverage for giving liquor to a
minor who subsequently was involved in a head-on collision
while allegedly intoxicated that killed Susan Keillor. Keillor
brought a counterclaim against Allstate and a cross-claim
against Hayes. Hayes did not respond to either claim, but
declared in an affidavit that he chose not to contest the ques-
tion of coverage. The court, Judith A. Fullerton, J., granted a
default judgment against Hayes for Allstate and Keillor and
granted summary disposition for Allstate against Keillor. The
Court of Appeals, HOOD, P.J., and JANSEN and G. S. ALLEN, JJ.,
affirmed, holding that Keillor did not have standing to contest
the existence of coverage under the policy because he was not a
third-party beneficiary of the policy, and stated that once
Daniel Hayes conceded that there was no coverage and had a
default entered against him, Keillor could not continue to
pursue the action to enforce the insurance contract (Docket No.
116006). The Supreme Court, reversed, holding that the defen-
dant had standing and remanded the case to the Court of
Appeals to decide whether the exclusions applied, 442 Mich 56
(1993). On remand, the Court of Appeals, HOOD, P.J., and
JANSEN and BRENNAN, JJ., affirmed in an opinion per curiam,
holding that coverage was precluded by both the criminal acts
and motor vehicle exclusions (Docket No. 165157). The defen-
dant appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice
BRICKLEY, and Justices BOYLE and MALLETT, the Supreme Court
held:

The plaintiff's homeowner's insurance policy does not pro-
vide liability coverage for personal injuries arising out of the
ownership, maintenance, use, loading, or unloading of any

motorized vehicle. Thus, the personal injuries forming the basis of this case, which arose out of an automobile accident, must be excluded from the scope of the policy.

1. An insurance policy is a contract that must be examined as a whole and meaning given to all terms. Any clause is valid as long as it is clear, unambiguous, and not in contravention of public policy. Ambiguity cannot be created where none exists. Exclusionary clauses are strictly construed in favor of the insured; however, coverage is lost if any exclusion applies to an insured's particular claims. A court also may consider the reasonable expectations of the insured, but must examine the policy language from an objective standpoint and determine whether an insured reasonably could have expected coverage.

2. In this case, the motor vehicle exclusion provides that bodily injury or property damage arising out of the ownership, maintenance, use, loading, or unloading of any motorized land vehicle is not covered. The clause is unambiguous, and does not contravene public policy. Therefore it must be enforced as written. This does not conflict with the reasonable expectations of the insured.

Justice RILEY, joined by Justice WEAVER, concurred.

Affirmed in part.

Justice LEVIN, dissenting, stated that whether bodily injury reasonably may be expected to result from serving alcoholic beverages depends on the facts, cannot be decided as a question of law by the court, and, thus, presents a question for resolution by the trier of fact.

There are two areas of ambiguity in motor vehicle exclusions included in homeowner's policies. The most widely used homeowner's policy provides that excluded from the liability coverage is bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured. Upon carefully reading, and understanding all the language in this policy, at least two reasonable interpretations of the exclusion could be found. One is that the exclusion applies only where the insured has some control over the vehicle. Another, accepted by the majority, would exclude from coverage liability for all injuries associated with any motor vehicle, regardless of whether the liability would be covered by the insured's automobile policy. Reading the policy as a whole, the exclusion is subject to yet a third interpretation: that Allstate agreed to pay all sums that an insured becomes legally obligated to pay unless the liability arises out of the ownership,

maintenance, use, loading or unloading of any motorized land vehicle.

The insured's liability arose, if at all, from serving alcoholic beverages to an eighteen-year-old social guest and not from the use of a motor vehicle. A natural reading of the policy language admits of the construction that the exclusions relate only to liability of the insured. As a result, the motor vehicle exclusion might apply only where the insured's legal liability arises from the use of a motor vehicle. Construing the ambiguous exclusion against the insured, in accordance with the usual rule of construction, the exclusion would not apply, where, as in this case, the insured's legal liability does not arise out of the use of a motor vehicle. The holder of a homeowner's policy reasonably may expect that it complements the holder's automobile insurance policy, and could reasonably expect that the automobile exclusion precludes coverage only of liabilities covered by automobile insurance.

203 Mich App 36; 511 NW2d 702 (1993) affirmed in part.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), and *Chasnis, Dogger & Grierson, P.C.* (by *John A. Chasnis*), for the plaintiff.

*Philip D. Swann* for the defendant.

Amici Curiae:

*Gross, Nemeth & Silverman, P.L.C.* (by *James G. Gross*), for Auto Club Group Insurance Company.

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Curtis R. Hadley*), for Michigan Association of Insurance Companies.

#### AFTER REMAND

CAVANAGH, J. We affirm the decision of the Court of Appeals in part. The homeowner's insur-

ance policy issued by plaintiff does not provide
liability coverage for personal injuries arising out
of the ownership, maintenance, use, loading, or
unloading of any motorized vehicle. Therefore, the
personal injuries forming the basis of this case,
arising out of an automobile accident, are excluded
from the scope of the plaintiff's policy.

I[1]

On March 8, 1986, one week before Daniel
Hayes' entry into the United States Air Force, he
gave himself a going away party at a friend's
home. He bought two kegs of beer and charged
each guest a dollar to cover costs. Eighteen-year-
old Scott Koppelberger attended the party and was
allegedly intoxicated when he left early the next
morning. Susan Keillor was on her way to work
that morning when her car was involved in a
head-on collision with Koppelberger's car. Ms.
Keillor was killed.

William Keillor, individually and as personal
representative of the estate of his wife, filed an
action against Koppelberger, Hayes, and others,
alleging negligence, wrongful death, and violations
of the dramshop act.

Hayes, who lived with his father at the time,
tendered the defense of the action to his father's
homeowner's insurer, Allstate. Hayes answered
the complaint, and, two months later, Allstate sent

[1] These facts are largely taken from our opinion in *Allstate Ins Co v
Hayes,* 442 Mich 56, 58-61; 499 NW2d 743 (1993). Those desiring a
more developed factual or procedural background may find it there.

Hayes a reservation of rights letter.[2] Allstate then filed this action, seeking a declaration that its policy did not provide liability coverage for Hayes' alleged actions.

Allstate brought a motion for summary disposition arguing, among other things, that defendant lacked standing to contest coverage and that, even if he did, both the criminal acts and motor vehicle exclusions precluded coverage. The trial court granted the motion, finding that defendant lacked standing and that both the criminal acts and motor vehicle exclusions applied. The Court of Appeals upheld the trial court's ruling on the standing issue. 190 Mich App 499; 476 NW2d 453 (1991). This Court reversed, holding that defendant did have standing and remanded the case to the Court of Appeals to decide whether the exclusions applied. 442 Mich 56; 499 NW2d 743 (1993).

On remand, the Court of Appeals held that coverage is precluded by both the criminal acts and motor vehicle exclusions. 203 Mich App 36, 40-41; 511 NW2d 702 (1993). It is from that decision that the defendant now appeals.

II

Allstate does not dispute coverage, so the only issue before this Court is whether that coverage is precluded by an exclusion.[3] This, of course, means

---

[2] The defendant makes much of the fact that this reservation of rights letter did not mention plaintiff's reliance on the motor vehicle exclusion. The defendant claims that because the automobile exclusion was not raised in Allstate's reservation of rights letter, Allstate should be estopped from raising it. It should be noted, however, that Allstate did assert the exclusion in its second amended complaint. We hold that Allstate is not estopped from raising the motor vehicle exclusion because Allstate did not delay unreasonably in asserting the exclusion and the defendant has suffered no prejudice from the short delay.

[3] See *Allstate Ins Co v Freeman*, 432 Mich 656, 661; 443 NW2d 734 (1989).

that the primary issue before this Court is one of policy interpretation. When interpreting insurance policies, a number of well-established rules guide the analysis. Those relevant here are succinctly recounted in *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566-567; 489 NW2d 431 (1992):

> An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. Accordingly, the court must look at the contract as a whole and give meaning to all terms. Further, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." This Court cannot create ambiguity where none exists.
>
> Exclusionary clauses in insurance policies are strictly construed in favor of the insured. However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume. [Citations omitted.]

The inquiry does not necessarily end, however, with the rules of construction. A court may also consider the reasonable expectations of the insured. *Vanguard Ins Co v Clarke,* 438 Mich 463, 472; 475 NW2d 48 (1991). A court must look at the policy language from an objective standpoint and determine whether an insured could have reasonably expected coverage. In *Vanguard,* we held that the policy unambiguously excluded liability for personal injuries arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle owned or operated by, or rented or loaned to, any insured. *Id.* at 474.

The Court recognized that the accident was a risk that the insurer did not assume.

> In drafting an insurance policy, the drafters calculate the probability of risk in setting the price paid by the insured. Here, a specific excluded risk comprised part of that calculus. Because the tragic event at issue here clearly "arose out" of the operation and use of an automobile, and it cannot be said that the insured had been led to reasonably expect coverage under the policy, the exclusion stands. [*Vanguard* at 475.]

Similarly, in *Farm Bureau Mut Ins Co of Michigan v Stark*, 437 Mich 175; 468 NW2d 498 (1991), we held that the motor vehicle exception was unambiguous and that a moped was a motor vehicle under the terms of the policy. *Id.* at 185. We also held that allowing injuries resulting from motor vehicle accidents to be compensable under a homeowner's policy would expand the liability of insurers in ways not anticipated when the policy was drafted.

> Generally speaking, a homeowner's policy is designed to protect against losses arising out of the ownership or use of a particular residential building and its appurtenant structures, not liability connected to the operation of motor vehicles on public highways. Motor vehicle exclusions, such as the one in the instant case, are commonly included in homeowner's policies. The basis for the motor vehicle exclusion is evident: using a motor vehicle designed for travel on public roads greatly increases the risk of bodily injury and property damage, and such liability is not within the risk which homeowner's contracts are designed to cover or for which premiums are charged. The risk of

liability from the use of a motor vehicle is traditionally and properly covered by motor vehicle policies, not by homeowner's insurance. We conclude that the plaintiff's policy unambiguously excludes such a motor vehicle, the moped, from its coverage. [*Id.*]

III

The relevant exclusion in this policy provides that Allstate does "not cover bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of *any* motorized land vehicle or trailer."[4] As we held in *Churchman,* any clause in an insurance policy is valid as long as it is clear, unambiguous, and does not contravene public policy. This Court will not create ambiguity where none exists.

---

[4] In its entirety, the motor vehicle exclusion provides:

We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of any motorized land vehicle or trailer. However, this exclusion does not apply to:

(a) a motorized land vehicle in dead storage or used exclusively on the residence premises;

(b) any motorized land vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from the residence premises;

(c) a golf cart owned by an insured person when used for golfing purposes;

(d) a trailer of the boat, camp, home or utility type unless it is being towed or carried by a motorized land vehicle;

(e) bodily injury to a residence employee.

We find that this provision is unambiguous.[5] It plainly states that homeowner's coverage does not extend to personal injury or property damage arising out of the use or operation of any motor vehicle. Furthermore, defendant has not shown us how this exclusion contravenes public policy.

Having concluded that there is no ambiguity in this exclusion, it must be enforced as written. Coverage under a policy is lost if any exclusion within the policy applies to a particular claim. "[A]ny motorized land vehicle" means just that. Koppelberger was operating a "motorized land vehicle," more specifically, a car, when he struck and killed Keillor. The exclusion applies, and coverage for Hayes under this homeowner's policy is correspondingly lost.

This holding does not conflict with reasonable expectations of the insured. When viewed objectively, a person reading this unambiguous exclusion would reasonably expect that it means what it says: coverage does not exist for personal injuries arising out of the use of any motor vehicle. Thus, it cannot be said that the insured had been led to reasonably expect coverage.

IV

The decisions of the trial court and the Court of Appeals are affirmed only insofar as they hold that coverage is precluded by the motor vehicle exclu-

---

[5] The only difference between this exclusion and the exclusion in *Vanguard Ins Co v Clarke, supra* at 473, is that the exclusion in *Vanguard* included the words "owned or operated by . . . any Insured." *Id.* at 468. It, therefore, provides a narrower exclusion than the exclusion in this case because this exclusion is not contingent on the ownership or use of the motor vehicle by an insured. It applies to any motor vehicle. We refuse to accept the proposition that the deletion of the language referring to the ownership or use of the insured somehow transforms this unambiguous provision into an ambiguous one.

sion. Having found that the motor vehicle exclusion precludes coverage, there is no need to discuss the criminal acts exclusion.

BRICKLEY, C.J., and BOYLE and MALLETT, JJ., concurred with CAVANAGH, J.

RILEY, J. (*concurring*). I write separately to signal my concerns with the result of the Court of Appeals regarding the intentional/criminal acts exclusion. I agree, however, that because the Court holds that the automobile exception precludes coverage, we are not required to rule on this exception.

WEAVER, J., concurred with RILEY, J.

LEVIN, J. (*dissenting*). Plaintiff, Allstate Insurance Company, commenced this action for a declaratory judgment against defendant William Keillor, personal representative of the estate of his deceased wife, Susan Keillor.

The decedent was killed when her vehicle collided with a vehicle being driven by an eighteen-year-old social guest of the son of the person to whom Allstate had issued a homeowner's policy of insurance. Keillor had commenced an action claiming that the insured's son, an additional insured under the policy, had served intoxicating beverages to the guest who drove the vehicle that collided with the deceased's vehicle.

The question presented is whether exclusions for bodily injury (1) arising out of the use of "any motorized land vehicle" or (2) which may "reasonably be expected to result from the intentional or criminal acts of an insured person," relieve Allstate of liability under the policy.

The policy provides:

Losses We Cover

We will pay all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.

\*   \*   \*

Exclusions—Losses We Do Not Cover

1. We do not cover any bodily injury or property damage which may *reasonably be expected to result from the intentional or criminal acts* of an insured person or which is in fact intended by an insured person.

\*   \*   \*

5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of *any motorized land vehicle* or trailer. [Emphasis added.]

I

I would hold that whether bodily injury may reasonably be expected to result from serving alcoholic beverages depends on the facts, and, hence, cannot be decided as a question of law by the court, and thus presents a question for resolution by the trier of fact, a jury. See *Buczkowski v Allstate Ins Co,* 447 Mich 669; 526 NW2d 589 (1994).

II

The majority finds that the motor vehicle exclusion is unambiguous.[1] In my opinion, there are two areas of ambiguity.

A

Motor vehicle exclusions are included in homeowner's policies because an insured's driving risks

---

[1] *Ante,* p 419.

are "traditionally and properly covered by motor vehicle policies, not by homeowner's insurance."[2] The motor vehicle exclusion reduces homeowner's premiums by removing the risks of operating an automobile from coverage.[3] Consistent with this purpose, homeowner's policies generally exclude only motor vehicles owned or operated by or rented or loaned to an insured.

The "most widely used homeowners policy"[4] provides that there is excluded from the liability coverage bodily injury or property damage "arising out of . . . the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, *owned or operated by or rented or loaned to an insured* . . . ."[5] (Emphasis added.)

The motor vehicle exclusion in the Allstate policy differs from the language employed to express this exclusion in the most common homeowner's policies. Absent an express statement that the exclusion for any motorized vehicle applies without regard to whether the vehicle is owned, maintained, or used by the insured, the exclusion is, I think, ambiguous, reading the exclusion from the standpoint of the insured.

This Court has defined an ambiguous contract as one in which the " 'words may reasonably be

[2] *Farm Bureau Mut Ins Co of Michigan v Stark,* 437 Mich 175, 185; 468 NW2d 498 (1991).

[3] *Id.*

[4] The Annotations to the Homeowners Policy (2d ed), prepared by the Property Insurance Law Committee, Tort and Insurance Practice Section of the American Bar Association, states in the introduction that the Insurance Services Office and State Farm Homeowner's Policies "annotated here are representative of the most widely used homeowners policy, the form 3."

[5] Insurance Services Office Policy, *id.,* p 19. See p 18 of the Annotations for the State Farm Homeowner's Policy, which excludes bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of "a motor vehicle *owned or operated by or rented or loaned to any insured* . . . ." (Emphasis added.)

understood in different ways.' "[6] The rare insured who took the time to read carefully and understand all the language in this policy could find at least two reasonable interpretations of this exclusion. One interpretation is that it aims to streamline the language. Under this reading, the exclusion applies only where the insured has some control over the vehicle.

The United States Court of Appeals for the Sixth Circuit suggested that the exclusionary language might reasonably be read this way. *Allstate Ins Co v Mercier,* 913 F2d 273 (CA 6, 1990), involved facts very similar to those here. The exclusionary language was identical to that in this case.[7] The court said:

> Ownership, maintenance, use and loading or unloading all imply some degree of control or right to possession of a vehicle. If the purchaser of a homeowners policy could reasonably assume that [this auto exclusion] applied only to injury involving a vehicle over which the insured homeowner had some measure of control, the question of [this control] would be critical. [*Id.,* p 278 (emphasis added).]

Other courts have held that the absence of "owned or operated by the insured" language does not eliminate the need for the insured to have exercised some control over the vehicle for the exclusion to apply.[8]

---

[6] *Stark,* n 2 *supra,* p 181, quoting *Raska v Farm Bureau Mut Ins Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440 (1982).

[7] While discussing this point, the court did not resolve whether the exclusion applied. It held that this legal issue should be dealt with in state court where a factual record could be developed, instead of through a federal declaratory judgment action. *Id.,* pp 278-279.

[8] *Lane v Hartford Fire Ins Co,* 343 F Supp 79, 88 (ED Mo, 1972) (requiring some "action on [the insured]'s part" in operating, owning, or maintaining a car, where exclusion referred to operation, owner-

Another interpretation of the policy language is the one accepted by the majority: that it excludes from coverage liability for *all* injuries associated with *any* motor vehicle, regardless of whether the liability would be covered by the insured's automobile policy. While this is a possible reading, it is not the *only* reasonable interpretation of this language.

B

Reading the policy as a whole—"Losses We Cover" together with "Exclusions—Losses We Do Not Cover"—the exclusion is subject to a third interpretation: that Allstate agreed to pay all sums that an insured person becomes legally obligated to pay unless the liability arises out of the ownership, maintenance, use, loading or unloading of any motorized land vehicle.[9]

The insured's liability arose, if at all, from serv-

ship or maintenance of "automobiles"). *Cooperative Fire Ins v Vondrak,* 74 Misc 2d 916; 346 NYS2d 965 (1973), may provide another example. The court did not quote the specific exclusionary language, but stated that it referred to use or ownership of "an automobile." *Id.,* p 918. The court found a duty to defend the insured for liability under a dramshop law. *Id.*

[9] The following sets forth the "Losses We Cover" and the "Exclusions—Losses We Do Not Cover" language together with the word "unless" substituted for "We Do Not Cover" and elimination of other words as parenthetical:

> We will pay all sums arising from the same loss which an insured person becomes legally obligated to pay[,] ~~as damages because of bodily injury or property damage covered by this part of the policy.~~
> [unless]
> ~~We do not cover bodily injury or property damage~~ arising out of the ownership, maintenance, use, loading or unloading of any motorized land vehicle or trailer.

Another reading, the reading adopted by the majority, eliminates coverage whenever the bodily injury arises out of the use of any motorized land vehicle, even though the insured's legal liability arose, as here, independently of the use of a motor vehicle.

ing alcoholic beverages to an eighteen-year-old
social guest and not from the use of a motor
vehicle. A natural reading of "Losses We Cover"
and "Exclusions—Losses We Do Not Cover" admits
of the construction that the exclusions relate only
to liability of the insured. As a result, the motor
vehicle exclusion might apply only where the in-
sured's legal liability arises from the use of a
motor vehicle. Construing the ambiguous exclusion
against the insured, in accordance with the usual
rule of construction, the exclusion does not apply,
where, as here, the insured's legal liability does
not arise out of the use of a motor vehicle.

III

Even if the exclusionary language in this policy
is unambiguous, the majority fails to take the
policyholder's reasonable expectations into ac-
count. The majority misunderstands the reason-
able expectations doctrine when it states:

> This holding does not conflict with reasonable
> expectations of the insured. When viewed objec-
> tively, a person reading this unambiguous exclu-
> sion would reasonably expect that it means what
> it says: coverage does not exist for personal inju-
> ries arising out of the use of any motor vehicle.
> Thus, it cannot be said that the insured had been
> led to reasonably expect coverage.[10]

The reasonable expectations of the insured are
to be considered when and after it has been deter-
mined that the policy language unambiguously
favors the construction urged by the insurer. But
an insured's reasonable expectations do not de-
pend on whether he read the policy, or understood

10 *Ante*, p 420.

what he read. As stated in Keeton & Widiss, Insurance Law:

> In general, courts will protect the reasonable expectations of applicants, insureds, and intended beneficiaries regarding the coverage afforded by insurance contracts *even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer.*[11] [Emphasis added.]

The holder of a homeowner's policy may reasonably expect that it complements his automobile insurance policy. He could reasonably expect that the automobile exclusion precludes coverage only of liabilities covered by automobile insurance.

In *United Services Automobile Ass'n v Aetna Casualty & Surety Co,* 75 AD2d 1022; 429 NYS2d 508 (1980), New York's intermediate appellate court considered homeowner's policy language identical with the language in the Allstate policy[12] in a case in which the family of a twelve-year-old boy sought to recover on the basis of negligent supervision for injuries sustained during horseplay with other children in an automobile excursion. The court concluded that the automobile policy did not provide coverage, but that the homeowner's policy should be construed to avoid a gap in coverage:

> Aetna as the homeowners' carrier understand-

---

[11] Keeton & Widiss, Insurance Law, § 6.3, p 633.

[12] Aetna's argument that it has no duty to defend its insured is based solely on the argument that there is coverage by United, Coverage "E" of the Aetna policy also provides personal liability insurance. Aetna's argument that its policy does not provide coverage is based on an exclusion for bodily injury "arising out of the ownership, maintenance, operation, use . . . of . . . any motor vehicle." [*Id.,* p 1022.]

ably does not want to provide coverage already specifically covered by the auto carrier. However, there is no reason to construe the phrase "arising out of" any differently for a homeowners' policy exclusion than for an auto carrier's coverage clause. To construe these identical phrases differently would leave open the possibility that some occurrences could escape coverage on both policies.[13]

The majority's interpretation of the automobile exclusion creates just such a gap in coverage.[14]

I would reverse.

[13] *United Services Automobile Ass'n, supra,* p 1022. While the foregoing decision was not rested in the application of the reasonable expectations doctrine, the court's reading of the homeowner's policy to avoid a gap in coverage is in the spirit and policy of the reasonable expectations doctrine.

[14] In *Vanguard Ins Co v Clarke,* 438 Mich 463, 474; 475 NW2d 48 (1991), this Court said: "The instant case does not confront the Court with a situation where an unfortunate insured would fall between [the] gaps in homeowner's and automobile insurance policies because of mutual exclusions." The instant case is such a case.