Althea B. BANNER, Individually and as Personal Representative of the Estate of Michael L. Banner, Deceased,

Michelle Steiger; Ramon Jimison, Administrator of the Estate of Stewart Jimison, Deceased, Plaintiffs–Appellants,

v.

RAISIN VALLEY, INC. et al,

Pioneer State Mutual Insurance Company, Defendant–Appellee.

Nos. 00–3766, 00–3795.

United States Court of Appeals, Sixth Circuit.

April 9, 2002.

Before SUHRHEINRICH, and COLE, Circuit Judges, and COLLIER,* District Judge.

PER CURIAM.

Plaintiffs Althea Banner, individually and as the personal representative of Michael L. Banner, deceased, and Michelle Steiger, Beverly Jimison, administrator of the estate of Stewart Jimison, deceased, appeal from the order of the district court granting summary judgment to Defendants Pioneer State Mutual Insurance Co. in this diversity action.[1] For the reasons that follow, we **REVERSE**.

## I. Facts

Defendant Earl Phillips is involved in several businesses, including Raisin Valley Farms, an agricultural operation, and Raisin Valley Inc. ("RVI"), a cartage business. On December 29, 1995, defendant Earl Phillips was involved in a multiple-car auto accident while driving a 1990 five-axle International semi-tractor ("1990 International") owned by Raisin Valley, Inc. ("RVI"). Stewart Jimison and Michael Banner were killed, and several others injured. At the time of the accident, Phillips was returning from Milan, Ohio after hauling seed corn for a neighboring farmer, Richard Garno.

Raisin Valley Farms is insured by Pioneer State Mutual Insurance Company. On August 5, 1995, Pioneer issued a Farm-owners Policy of insurance to Earl Phillips and Cora Mae Phillips d/b/a Raisin Valley Farms, bearing the Policy No. FM00004052 ("Farm Policy"). RVI is insured by Reliance Insurance Company, which issued Business Auto Coverage Policy No. NKA250901903 to RVI. Earl Phillips is listed as an "additional insured" on the Reliance Policy. Earl Phillips also has an Auto Owners Insurance Policy, Policy No. 66060106499511 ("Auto Policy"). Finally, Earl Phillips and Cora Mae Phillips have a Personal Umbrella Liability Policy issued by Pioneer, bearing the Policy No. 10–UF0143.

Plaintiffs sued, *inter alia*, Raisin Valley, Inc., Earl Phillips, Cora Mae Phillips, and Warren Phillips. Plaintiffs filed a complaint for declaratory relief on December 1, 1997, adding, *inter alia*, Pioneer, Reliance, and Auto–Owners as declaratory judgment defendants. Among other claims, Plaintiffs alleged that Pioneer provided coverage for Earl Phillips under the Umbrella Policy and/or the Farm Policy.

Reliance, on behalf of RVI, settled with Plaintiffs, paying the limits of liability coverage, $1,000,000.

The district court granted summary judgment and declaratory judgment to Pioneer, concluding that neither the Umbrella Policy nor the Farm Policy provided coverage to Phillips relative to the crash, and subsequently denied the plaintiffs' motions for reconsideration.

On appeal, Plaintiffs claim that the Farm Policy and the Umbrella Policy both provide coverage for the accident.

## II. Analysis

We review a district court's grant of summary judgment *de novo. Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. The cases were consolidated in the district court.

judgment as a matter of law." Fed. R.Civ.P. 56(c).

The district court applied Michigan law, and the parties agree that the substantive law of Michigan governs. When interpreting insurance policies, the Michigan courts follow a number of well-established principles. *Allstate Ins. Co. v. Keillor*, 450 Mich. 412, 537 N.W.2d 589, 591 (1995).

> An insurance policy is much that same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. Accordingly, the court must look at the contract as a whole and give meaning to all terms. Further, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." This Court cannot create an ambiguity where none exists. Exclusionary clauses in insurance policies are strictly construed in favor of the insured. However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume.

*Id.* (quoting *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 489 N.W.2d 431 (1992)).

On the other hand, "[i]f a fair reading leads one to understand there is coverage under particular circumstances and another fair reading leads one to understand there is no coverage under the same circumstances, the contract is ambiguous and should be construed against the drafter and in favor of coverage." *Michigan Township Participating Plan v. Pavolich*, 232 Mich.App. 378, 591 N.W.2d 325, 328 (Mich.Ct.App.1999) (per curiam) (citing *Raska v. Farm Bureau Mut. Ins. Co.*, 412 Mich. 355, 314 N.W.2d 440, 441 (Mich.

1982)). A court should also consider the reasonable expectations of the insured. *Vanguard Ins. Co. v. Clarke*, 438 Mich. 463, 475 N.W.2d 48, 52 (Mich.1991). This requires examining the policy language from an objective standpoint of an insured. *Id.*

## A. Farm Policy

■ Plaintiffs argue that Phillips was engaged in "custom farming" at the time of the accident, which is covered under the Farm Policy. Alternatively, they claim that at the very least, there is a genuine issue of fact as to whether Phillips's storing and hauling of the seed corn for Garno was a "custom farming" activity. Prior to the fateful occurrence on December 29, 1995, Phillips had stored Garno's seed corn for six to eight weeks, first on Garno's farm and then on Warren Phillips' farm.

We agree with the district court that the Farm Policy does not provide coverage. First, as the district court held the Farm Policy does not provide coverage because Earl Phillips was not engaged in custom farming at the time of the accident. The policy describes "farming" as "the ownership, maintenance, or use of premises for the production of crops or the raising or care of livestock and poultry." "Custom farming" is defined as "farming operations involving the production or harvesting of crops for others away from the insured location for remuneration." As the district court concluded:

> This issue ... is whether [Phillips] was involved in "production or harvesting of crops for others" when he hauled seed corn for another farmer. It is undisputed that Earl Phillips had no role in growing the corn and was therefore not engaged [in] "production of crops." This leaves only the question of whether Earl Phillips was harvesting crops for others.

To "harvest" means to "to gather in (a crop): REAP." *Third Webster International Dictionary* (1993). To "reap" means to cut (as grain) with a sickle, scythe, or reaping machine ... to clear (as a field) of a crop by so cutting ... to gather or obtain by so cutting, *esp.:* HARVEST. *Id.* It is clear that harvesting involves the gathering of a crop from the field. At most, Phillips gathered the already harvested seed corn into a trailer and hauled it away.

Because Earl Phillips neither produced nor harvested the seed corn of Richard Garno, Inc., he did not engage in custom farming.

(D.Ct. Op. at 4; J.A. 860.)

■ We also agree with the district court's conclusions that the "business exclusion" and "motor vehicle exclusion" preclude coverage. As the district court observed, the Farm Policy does not cover injuries "arising out of or in connection with a business engaged in by an insured" unless it was farming or custom farming. (D.Ct. Op. at 5; J.A. 861.) Given that "Earl Phillips was not engaged in farming or custom farming, the Farm Policy does not cover the December 29, 1995 accident because the accident arose out of or in connection with Earl Phillips' engagement in a business, namely, trucking for RVI." (*Id.*)

Although we can decide this question as a matter of law, it should be noted that Garno's testimony also supports this result. Garno testified that Earl Phillips was not one of his employees at Garno, Inc., and that Phillips did not have any role in planting, fertilizing, or harvesting the seed corn that was delivered to Milan on December 29, 1995. Further, Garno indicated that the only work Phillips did was to take the seed corn to the Milan facility for processing. (J.A. 1798.) As Garno stated, "he [Phillips] was a trucker, a hired trucker." (*Id.* at 1799.)

■ The accident is also excluded under the "motor vehicle exclusion" of the Farm Policy. It excludes coverage for bodily injury or property damage "arising out of ... the ownership, maintenance, use, loading or unloading of motor vehicles, or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an Insured[.]" (J.A. 1151.) Again, as the district court concluded, "[t]he accident on December 29, 1995 arose out of the 'use' of a motor vehicle, namely the 1990 International." (D.Ct. Op. at 861). *Cf. Keillor,* 537 N.W.2d at 592 (regarding a similar motor vehicle exclusion provision, concluding that "[w]hen viewed objectively, a person reading this unambiguous exclusion would reasonably expect that it means what it says: coverage does not exist for personal injuries arising out of the use of any motor vehicle").

## B. Umbrella Policy

■ The Umbrella Policy also contains a "business exclusion" provision. It excludes coverage for

> personal injury or property damage arising out of, or in connection with, a business engaged in by an insured, *unless covered by primary insurance described in the Declarations.* Our coverage is no broader than the primary insurance except for our liability limit. (Emphasis added.)

> This exclusion does not apply to the business use of a private passenger auto, unless used to carry persons or property for a charge.

(J.A. 1176.) "Business" is defined as including "employment, trade, profession or occupation (but not 'farming')." (*Id.* at 1174.)

As the district court observed, Phillips was engaged in a business when the accident occurred. Thus, the business exclusion applies to this case. This does not end the matter, however, because the business exclusion clause contains two exceptions. In other words, there are two instances where the Umbrella Policy will cover damages arising out of or in connection with a business engaged in by the insured.

One, the private passenger auto exception, clearly does not apply here. As the district court held, the 1990 International is not a private passenger auto. (J.A. 862.)

The other exception to the business exclusion is for those damages covered by "primary insurance described in the Declarations." As the district court observed: "The language of the exception is clear: it will cover business related injuries [and] damages if those injuries and damages are covered by primary insurance listed in the Declarations." (J.A. 863.) Thus, as the district court noted, there are three possible primary insurance policies in this case; the Farm Policy, the Auto Policy, and the Reliance Policy.

The district court is correct in concluding that neither the Farm Policy nor the Auto Policy trigger coverage under the Umbrella Policy.[2] Because the Farm Policy does not cover this incident, the Umbrella Policy, whose "coverage is no broader than the primary insurance except for our liability limit" does not cover this incident. The Auto Policy insures "the automobile(s)" described in the Declarations. (J.A. 1074.) The 1990 International is not listed in the Declarations. Furthermore, the Auto Policy also does not cover "an automobile used in your business or occupation ... unless it is ... a private passenger automobile." The 1990 International is clearly not that.[3] (J.A. 1081.)

This leaves the Reliance Policy. The district court determined that the Reliance Policy arguably fell within the first category listed on the Pioneer Umbrella Policy Schedule of Minimum Primary Insurance Requirements, namely "AUTO LIABILITY INSURANCE FOR AUTOS YOU OWN, LEASE OR USE REGULARLY," because the 1990 International was an auto[4] that Phillips "used regularly."[5]

2. The Declarations in the Umbrella Policy list six categories of primary insurance requirements, but does not list specific underlying policies. The only reference is to "Schedule of Minimum Primary Insurance Requirements." (*Id.*) However, in *State Farm Fire Cas. Co. v. First Nat'l Bank of Madison County*, 969 F.2d 521 (7th Cir.1992), the Seventh Circuit affirmed the district court's refusal to say that the specific policy was not listed, since the declarations page listed only types of insurance and not specific policies. *Id.* at 523.

3. The Auto Policy defines "automobile" as "a private passenger automobile, a truck, truck tractor, trailer, farm implement or other land motor vehicle." (J.A. 1074.)

4. The Umbrella Policy definition of "auto" includes "land motor vehicle, trailer or semi-trailer." *Cf. State Farm*, 969 F.2d at 523.

5. In this regard, the district court ruled:
It is undisputed that the Reliance Policy covers this accident. Because this policy covered the accident, it is possible that the Umbrella Policy also provides coverage, if the Reliance Policy is "primary insurance described in the Declarations."

I can find no indication that the Reliance Policy is specifically described in the Declarations. Ordinarily, this would end my inquiry. However, I can find no listing of any specific policy in the Declarations. Not even the Farm Policy, also issued by Pioneer, is listed specifically in the Declarations. Rather, the only reference to primary insurance is the "Schedule of Minimum Primary Insurance Requirements."

In *State Farm*, the Seventh Circuit likewise found that a "policy's declaration pay [sic] did not list any specific [primary] insurance policies." 696 F.2d at 522. Instead, the court found, as I have here, that

In ultimately concluding that it was not, the district court reasoned as follows:

> The first page of the Umbrella Policy contains the following language: "You have told us you now have primary insurance in force as described in the policy. Please check your other policies to be sure the liability limits are as described." ... "You" is a reference to the insured under the Umbrella Policy, Earl Phillips. However, while Earl Phillips "had" the Auto Owners Policy and the Farm Policy because he was insured on those policies, he did not "have" the Reliance Policy because he was not insured under the Reliance Policy. The insured was RVI.
>
> Thus, the reason that the Auto Owners Policy and the Farm Policy are primary insurance described in the Declaration is because both policies fit under one of the descriptive categories in the Schedule and Earl Phillips, the insured of the Umbrella Policy, is also the insured of the other two policies. While the Reliance Policy matches the description in category one of the Schedule, Earl Phillips is not the insured for the Reliance Policy.
>
> Therefore, the Reliance Policy will cover the acts of Earl Phillips because he was acting as RVI's agent, but this coverage does not transform the Reliance Policy into primary insurance for Earl Phillips' Umbrella Policy. In light of my recent decision that RVI is a legal entity distinct from Earl Phillips, I conclude that plaintiffs have failed to show that RVI's insurance contract with Reliance should somehow trigger coverage under the Umbrella Policy between Earl Phillips and Pioneer.

(D.Ct. Op. at 10–11; J.A. 866–67.) On Plaintiffs' motion for reconsideration, the district court clarified:

> In my original opinion, I interpreted the term "described" as used in the Pioneer Policy to mean that an insurance policy is "described" if it fits within the descriptions found in the Schedule and the insurance policy [that] belonged to Earl Phillips. I then determined that Earl Phillips did not "have" the Reliance Policy. I held, "while Earl Phillips 'had' [other insurance policies fitting the descriptions found in the Schedule] because he was the insured on those policies, he did not 'have' the Reliance Policy because he was not the insured under the Reliance Policy. The insured was RVI." ... The Reliance Policy belonged to RVI.
>
> Plaintiffs and moving defendants argue that the Reliance Policy belonged to Earl Phillips because he was "an insured" under the Reliance Policy. As

---

"the declarations page set out ... categories of [primary] coverage ... and set out the minimum amount of coverage required to be provided under each category." *Id.* The court went on to say that the "[district] court correctly refused to say that the specific policy was not listed, since the declarations page lists only types of insurance, not specific policies." *Id.* at 523.

The first category listed on the Pioneer Umbrella Policy Schedule of Minimum Primary Insurance Requirements ("Schedule") reads "AUTO LIABILITY INSURANCE FOR AUTOS YOU OWN, LEASE OR USE REGULARLY...." It also states that the minimum required liability limit for an auto liability policy is $500,000 for each occurrence. Despite Pioneer's assertion that the Declarations do not "name or describe by category the Reliance Policy," I can see no reason why the Reliance Policy does not fit within this description....

The Reliance Policy covered the 1990 International which was an auto Earl Phillips used regularly.

(D. Ct. Op at 9; J.A. 865.) Pioneer does not challenge this aspect of the district court's analysis on appeal. In any event, we think it correct.

defined in the Reliance policy, "insured" included anyone "using with [RVI's] permission a covered 'auto' [RVI] own[s]." ... While I agree that Earl Phillips is *an* "insured" under the Reliance Policy as the term is defined in that policy, I decline to alter or amend the holding. . . .

As my Order demonstrates, I was aware that the Reliance Policy covered the acts of Earl Phillips . . ., but when I used the term "the insured" I did not intend to use "insured" in the way that term is defined in the Reliance Policy. I used the term *"the* insured" (as opposed to *"an* insured") to describe one to whom a policy belongs or one who "has" a policy. Because "insured" was a defined term in the Reliance policy and the definition of insured had a meaning different from the meaning I ascribed to it, I should have used the term "named insured" to avoid any confusion.

I believe my conclusion is still sound. I note that the Umbrella Policy contains the following language under the heading "Maintenance of Primary Insurance": "You must keep the primary insurance described in the declarations in full force during the policy period for the full limits of liability shown." . . . Once again, "you" means Earl Phillips. Earl Phillips did not "keep" the Reliance Policy in full force—RVI "kept" the policy in full force. Earl Phillips did not "maintain" the Reliance Policy, RVI "maintained" the Reliance Policy.

(D.Ct. Op. at 4–5; J.A. 871–72.)

Plaintiffs contend that the district court erred because Phillips used the tractor trailer regularly and has primary insurance with Reliance while he is driving. Further, the fact that Phillips was sued personally and is liable personally is all that matters, because "[h]e has a *personal* umbrella policy which provides insurance for damages he must legally pay because of personal injury." Steiger Br. at 17. In other words, the Reliance Policy meets the test of primary insurance for purposes of the Umbrella Policy.

We find ourselves presented with two plausible interpretations of the Umbrella Policy. On the one hand, we are persuaded by Pioneer's argument, and the district court's interpretation, that the Umbrella Policy is intended to be in excess of primary insurance that the insured pays for himself. Indeed, under the heading "Maintenance of Primary Insurance," the Umbrella Policy provides that "[y]ou must keep the primary insurance described in the Declarations in full force during the policy period for the full limits of liability shown." "You" under the Umbrella Policy "refer[s] to the 'named insured' shown in the Declarations." " '[N]amed insured' means the person named in the Declarations."

On the other hand, the Umbrella Policy does not expressly state that the "named insured" must himself pay the premiums in order for the primary policy to otherwise qualify for excess coverage. Rather, the apparent thrust of the "Maintenance of Primary Insurance" provision is that the qualifying primary policies be kept "in full force during the policy period." Thus, it would not be unreasonable for Earl Phillips to conclude that he had excess coverage for any personal liability above that provided in the primary policy on an auto he regularly used, and afforded him coverage. In other words, it is not unreasonable for Earl Phillips to believe that the Umbrella covered his personal liability in excess of the accident because the primary policy, the Reliance Policy, was in full force during the policy period. Further, in describing coverage, the Declarations do not limit the "Schedule of Minimum Primary Insurance Requirements" to "pri-

mary insurance *paid by you the insured."* Nor is the definition of "primary insurance" so limited. It merely states that the "primary insurance" "means insurance, described in the Declarations, which covers liability for personal injury or property damage." In short, because "primary insurance" is not expressly limited to insurance primary coverage paid only by the insured. Earl Phillips' interpretation of the Umbrella Policy is equally plausible.

Because the language of the Umbrella Policy is equally capable of two reasonable interpretations, it is ambiguous. *See Raska,* 412 Mich. 355, 314 N.W.2d 440; *cf. State Farm,* 969 F.2d 521 (interpreting nearly identical language on nearly identical facts; the majority concluded that the "private automobile language in the business operations exclusion excluded commercial cartage liability risks, whereas the dissent would have held that the policy will cover business operations if the business operations are covered in a declared policy and that the insurer could have easily avoided any ambiguity"). Because it is ambiguous, it must be construed against the drafter, here the insurer. Pioneer. *See Pavolich,* 591 N.W.2d at 328. It is for this reason then, that we must ultimately disagree with the district court's analysis and reverse the judgment in favor of the insurer.

### III. Conclusion

For the foregoing reasons we **REVERSE** the judgment of the district court, and **REMAND** for further proceedings consistent with this opinion.

COLLIER, District Judge.

I concur in all aspects of the majority opinion except for the majority's conclusion the Umbrella Policy is ambiguous. In my view the district judge correctly interpreted the policy language and there is no

ambiguity. Therefore, for the reasons stated by the district court, I would confirm. To this part of the decision, I respectfully dissent.