McGUIRK SAND & GRAVEL, INC v MERIDIAN MUTUAL INSURANCE
COMPANY

Docket No. 183051. Submitted June 18, 1996, at Lansing. Decided December 6, 1996, at 9:00 A.M.

McGuirk Sand & Gravel, Inc., brought an action in the Isabella Circuit Court against Meridian Mutual Insurance Company, seeking in part a declaration that the defendant, as the plaintiff's general liability insurer, is under a duty to defend and indemnify the plaintiff against an action for negligence and contribution for alleged soil and groundwater contamination relating to the plaintiff's compensated service of removing several underground tanks that had held diesel fuel and gasoline. The defendant moved for summary disposition, arguing that the absolute pollution exclusion of the insurance policy serves to exclude coverage for the plaintiff. The court, Paul H. Chamberlain, J., denied the motion. The defendant appealed by leave granted.

The Court of Appeals *held*:

The policy exclusion at issue provides that insurance does not apply to property damage arising out of the actual, alleged, or threatened discharge, dispersal, release, or escape of pollutants that are transported, handled, stored, treated, disposed of, or processed as waste by the insured at or from any site or location on which the insured is performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize the pollutants. The policy defines "pollutants" to mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. The policy exclusion clearly and unambiguously excludes coverage for the plaintiff. No question of fact exists to preclude summary disposition for the defendant with respect to whether the alleged contamination was caused by long-term leakage or by the actions of the plaintiff inasmuch as the policy excludes coverage for property damage caused by "alleged" discharge, dispersal, release, or escape of pollutants. No question of fact exists to preclude summary disposition for the defendant with respect to whether the substance that leaked from the tanks was a pollutant or contaminant because an agent of the plaintiff conceded that the substance was considered by the Department of Natural Resources to be a contaminant.

Reversed and remanded.

INSURANCE — POLICY EXCLUSIONS — JUDICIAL CONSTRUCTION.

> Exclusionary clauses in insurance policies are given effect by courts asked to construe them if the clauses are clear, unambiguous, and not in contravention of public policy.

*William R. Thompson*, for the plaintiff.

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Curtis R. Hadley*), for the defendant.

Before: SMOLENSKI, P.J., and FITZGERALD and F. D. BROUILLETTE,* JJ.

SMOLENSKI, P.J. Defendant Meridian Mutual Insurance Company appeals by leave granted the order denying its motion for summary disposition pursuant to MCR 2.116(C)(10). We reverse and remand.

This case involves a request for declaratory relief that defendant is under a duty to defend and indemnify plaintiff McGuirk Sand & Gravel, Inc., in spite of the pollution exclusion contained in the parties' commercial general liability insurance contract.

The City of Mt. Pleasant requested bids for the removal or demolition of various farm-related structures on land owned by the city. In particular, the work required the removal of two underground fuel storage tanks. Bidders were notified that the work required removal of all materials from the site for proper disposal. Plaintiff was aware that the tanks might contain contaminants that would have to be sent to a landfill. Plaintiff submitted a bid, specifically noting that "if any contaminated dirt is found upon the removal of tanks—all testing, digging & hauling will be extra." Plaintiff was thereafter awarded the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

contract. A third tank was discovered, and plaintiff was authorized by the city to also remove this tank. Before plaintiff removed the tanks, the city hired a waste hauler to pump out any contents remaining in the tanks. These contents were tested and, although determined to consist of water contaminated with petroleum, found to be clean enough to permit disposal at the city's water treatment plant.

After the contamination was discovered, plaintiff hired GarTech Environmental Services, Inc., to test the soil for petroleum products for the purpose of establishing a clean closure and to monitor the removal of the tanks. One tank was removed without incident. A second tank leaked approximately one quart of material as it was removed. The third tank disintegrated during the removal process, releasing up to ten gallons of liquid. The disintegrated tank, as well as soil that had come in contact with the released liquid, was dug up, placed on plastic sheets, and removed to a landfill. The remaining two tanks were taken to plaintiff's shop. A "floor dry, . . . like cat litter" was spread on the bottom of the tanks, which were then scraped with a drywall knife and cleaned. The scrapings were put in five-gallon pails and sent to a landfill for disposal. The two tanks were cut up and sold for scrap. GarTech did not test any of the soil excavated by plaintiff or prepare a report for closure because it was apparent that the property was polluted, as indicated by the strong smell of fuel from the ground where the tanks were removed.

After the city determined that the property and groundwater were contaminated, the city sued Union Land Company, a Michigan partnership that had formerly owned the property, and its partners, alleging

breach of an environmental covenant in the sales agreement and claiming that the partnership and partners were liable to the city for all costs of remediation and cleanup of the contaminated soil and groundwater. The partners filed third-party complaints against plaintiff for contribution premised on claims of state and federal law violations, as well as negligence.

After defendant denied an obligation to defend or indemnify plaintiff in that action, plaintiff filed its complaint in this case, which asserted that defendant had the duty to defend and indemnify plaintiff in the underlying suit and sought declaratory relief to that effect, as well as damages for breach of contract. The coverage clause of the contract provides, in relevant part, as follows:

> 1. Insuring Agreement.
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B. This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages.

The policy provides that " 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

After discovery was complete, defendant moved for summary disposition pursuant to MCR 2.116(C)(10),

arguing that it had no duty to defend or indemnify plaintiff because the following provisions of the pollution exclusion of the policy unambiguously applied in this case to preclude coverage:

2. Exclusions

This insurance does not apply to:

\*     \*     \*

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

\*     \*     \*

(c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

(d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

\*     \*     \*

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

\*     \*     \*

(2) Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Following oral argument, the trial court denied defendant's motion:

The court finds that . . . the plaintiff has set forth sufficient facts upon which viewed in a light most favorable to the plaintiff's position would give rise to a dispute. I don't

> think I need to necessarily get into all those facts. I think they're rather evident. Therefore, the motion for summary disposition is denied, counsel.

This appeal ensued.

Defendant again argues that summary disposition was appropriate because the previously quoted provisions of the pollution exclusion of the contract unambiguously apply to preclude coverage in this case.

We review the grant or denial of a motion for summary disposition pursuant to MCR 2.116(C)(10) de novo. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994).

> A motion pursuant to MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim. MCR 2.116(C)(10) permits summary disposition when except for the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to damages as a matter of law. A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. [*Id.*]

We find the following analysis from our Supreme Court's opinion in *Allstate Ins Co v Keillor (After Remand)*, 450 Mich 412, 416-417; 537 NW2d 589 (1995), applicable to this case:

> Allstate does not dispute coverage, so the only issue before this Court is whether that coverage is precluded by an exclusion. This, of course, means that the primary issue before this Court is one of policy interpretation. When interpreting insurance policies, a number of well-established rules guide the analysis. Those relevant here are succinctly recounted in *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566-567; 489 NW2d 431 (1992):

"An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. Accordingly, the court must look at the contract as a whole and give meaning to all terms. Further, '[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy.' This Court cannot create ambiguity where none exists.

"Exclusionary clauses in insurance policies are strictly construed in favor of the insured. However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume. [Citations omitted.]"

The type of pollution exclusion at issue in this case is known as an absolute pollution exclusion. See *Union Mutual Fire Ins Co v Hatch*, 835 F Supp 59, 63-64 (D NH, 1993); *Bureau of Engraving v Federal Ins Co*, 793 F Supp 209, 211-212 (D Minn, 1992), aff'd 5 F3d 1175 (CA 8, 1993). Because the insurance industry was dissatisfied with both the judicial constructions given to the previous type of standard pollution exclusion (i.e., such exclusions contain a "sudden and accidental" exception to the exclusion and thus preclude coverage for damage caused by pollution unless the damage is sudden and accidental, see, e.g., *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 449; 550 NW2d 475 [1996]; *Auto-Owners Ins Co v City of Clare*, 446 Mich 1, 8; 521 NW2d 480 [1994]; *Traverse City Light & Power Bd v Home Ins Co*, 209 Mich App 112, 115; 530 NW2d 150 [1995]) and the enormous expense and exposure resulting from the explosion of environmental litigation, the industry began to replace pollution exclusions containing a

"sudden and accidental" exception with an absolute pollution exclusion. *Union Mutual, supra* at 64-65; *Vantage Development Corp, Inc v American Environment Technologies Corp*, 251 NJ Super 516, 525; 598 A2d 948 (1991); see also *Center For Creative Studies v Aetna Life & Casualty Co*, 871 F Supp 941 (ED Mich, 1994). The purpose behind this type of pollution exclusion is to eliminate all pollution claims. *Vantage, supra* at 525-526.

The vast majority of courts asked to interpret absolute pollution exclusions have concluded that the exclusions are unambiguous and operate to exclude coverage for all claims alleging damage caused by pollution. *Union Mutual, supra* at 65; but see *West American Ins Co v Tufco Flooring East, Inc*, 104 NC App 312, 315, 319; 409 SE2d 692 (1991). There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution. *Employers Ins of Wausau v Duplan Corp*, 899 F Supp 1112, 1129, n 13 (SD NY, 1995). Most courts that have examined similar exclusions have concluded that they are clear and unambiguous and are just what they purport to be— absolute. *Northbrook Indemnity Ins Co v Water Dist Management Co, Inc*, 892 F Supp 170, 173 (SD Tex, 1995).

Although there is no appellate authority in Michigan interpreting an absolute pollution exclusion, we agree with the above authorities that the absolute exclusion in this case is clear and unambiguous.

The allegations in the first two counts of the third-party complaints against plaintiff essentially allege that plaintiff is responsible under federal and Michigan environmental laws for the alleged contamination

of the property because plaintiff released hazardous substances to the environment when the contents of one or more of the tanks ran onto and into the ground during and after plaintiff's excavation and removal of the tanks. The allegations in the third count of the complaint essentially allege that plaintiff had a duty to use due care when removing the tanks so as to avoid contaminating the property and that plaintiff breached this duty by failing, in part, to (1) completely remove the contents of the tanks before their removal, (2) provide containment for any hazardous substances remaining in the tanks, and (3) remove the tanks in such a manner as to avoid contaminating the soil and groundwater. The complaints allege that plaintiff's negligence caused the property to become contaminated. Thus, the third-party complaints allege " 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants . . . [a]t or from any site or location on which [plaintiff was] performing operations to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants."

Plaintiff contends that a question of fact exists concerning whether the property damage in this case arose out of a "discharge, dispersal, release or escape," as those terms of art in environmental law are used, where the discharge that caused the substantial environmental damages in this case resulted from the tanks leaking diesel fuel and gasoline over a long period, not from the spills that occurred when plaintiff removed the tanks. We disagree. The policy excludes coverage for property damage arising out of even an "*alleged* . . . discharge, dispersal, release or escape." In this case, the third-party complaints

clearly allege that plaintiff "*released* hazardous substances to the environment in that contents of one or more of said tanks ran onto and into the ground during and after removal by [plaintiff]." Moreover, even giving the benefit of doubt to plaintiff concerning the facts presented in this case, there is no question that the spills of liquid from the tanks constituted an "escape." See *Center for Creative Studies, supra* at 946 (noting that "escape" has been defined as "an 'evasion of or deliverance from what confines, limits, or holds' ").

Plaintiff contends that a question of fact exists concerning whether the substance that leaked out of the tanks was a "pollutant" where this substance was not tested and is probably identical to the substance removed from the tanks by the city's waste hauler, which was determined to be safe enough to dispose of directly into the city's waste water system. We disagree. The policy defines "pollutant" without qualification, i.e., as "*any* . . . liquid . . . contaminant." See also *Protective Nat'l Ins Co of Omaha v Woodhaven*, 438 Mich 154, 162-167; 476 NW2d 374 (1991). The third-party complaints essentially allege that plaintiff's release of "hazardous substances" to the environment during its removal of the tanks resulted in the "contamination" of the property. Moreover, even giving the benefit of doubt to plaintiff concerning the facts presented in this case, there is no question that the substance that spilled from the tanks was a "contaminant." Plaintiff concedes that the substance that leaked from the tanks during their removal was "probably . . . identical" to the substance removed from the tanks by the city's waste hauler. This substance was tested and, although determined to be

safe enough for disposal in the city's waste water system, found to be "noncombustible water contaminated with petroleum." In response to the question "Did you understand that the petroleum that would be in the tank or the soil would be regarded by the DNR as a contaminant?" plaintiff's agent testified at his deposition that "any type of fuel oil or gasoline is considered a contaminant to the ground." See also *Guilford Industries, Inc v Liberty Mutual Ins Co*, 688 F Supp 792, 794 (D Me, 1988), aff'd 879 F2d 853 (CA 1, 1989) (oil is a pollutant because it contaminates).

We conclude that even after looking behind the allegations in the third-party complaints there is no question that coverage is not possible for the claims asserted in this case.[1] *Woodhaven, supra* at 160. Accordingly, the policy did not impose upon defendant a duty to defend or indemnify plaintiff. *Id.* We reverse the trial court's denial of defendant's motion for summary disposition and remand for the entry of an order granting summary disposition for defendant. We do not retain jurisdiction.

Reversed and remanded.

---

[1] Plaintiff does not contend that it reasonably expected coverage. See, e.g., *Keillor, supra* at 417 ("The analysis of whether coverage is precluded by an exclusion does not end, however, with the rules of construction. A court may also consider the reasonable expectations of the insured."). Thus, we decline to address this issue. But see *Vantage, supra* at 953 (Although an absolute pollution exclusion "may have the effect of 'frustrating' the abstract coverage wishes and desires of policyholders, the language of the exclusion is clear and cannot be viewed as frustrating their reasonable expectations in light of that policy language.").