[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV. 1, 2000
THOMAS K. KAHN
CLERK

_____

No. 00-10283

_____

D. C. Docket No. 98-00565-CIV-T-26E

AUTO OWNERS INSURANCE CO.,

Plaintiff-Appellee,

versus

CITY OF TAMPA HOUSING AUTHORITY, a municipal agency,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 1, 2000)**

Before BLACK, BARKETT and FAY, Circuit Judges.

BARKETT, Circuit Judge:

The Housing Authority of the City of Tampa (the "Housing Authority")

appeals from summary judgment awarded to Auto-Owners Insurance Company

(the "Insurance Company") on the Insurance Company's suit for declaratory judgment. The summary judgment declares that because of a pollution exclusion clause in the policy covering the Housing Authority, the Insurance Company is liable for neither indemnification nor the costs of defense incurred by the Housing Authority when it was sued (the "Underlying Suit") for negligence. The Underlying Suit was brought against the Housing Authority by Sheletha Filmore, as mother and next friend of Darron Campbell, a child residing in a housing complex operated by the Housing Authority, alleging that Campbell had suffered injury by "ingesting and inhaling" lead from paint on the walls of the housing complex.

The district court held that because the injury alleged in the Underlying Suit arose out of the "discharge, dispersal, seepage, migration, release or escape of pollutants" it was specifically excluded from coverage under the policy. The Housing Authority argues two issues on appeal: first, that lead is not a pollutant as defined in the pollution exclusion clause; and second, that the lead in question did not move in the manner described in the pollution exclusion clause, to wit, through discharge, dispersal, seepage, migration, release or escape.

**FACTS**

The Insurance Company provided the Housing Authority with general commercial liability insurance from October, 1992 to October, 1995. Plaintiffs in the Underlying Suit alleged that, during the coverage period, Campbell was injured as a result of ingesting and inhaling lead from the old and crumbling paint on the walls of a Housing Authority dwelling. The Insurance Company agreed to defend the Housing Authority in the Underlying Suit under a reservation of rights. In this suit, the Insurance Company seeks a determination that it is not liable to the Housing Authority for the costs of defense or indemnification because the policy taken out by the Housing Authority contains a pollution exclusion clause which, the Insurance Company claims, covers liability arising from exposure to lead. The pollution exclusion "movement clause" states that it covers:

> "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

"Pollutants" are defined to include:

> any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

We review <u>de novo</u> a district court's grant of summary judgment, applying the same legal standards as the district court. See <u>Whatley v. CNA Ins. Cos.</u>, 189 F.3d 1310, 1313 (11th Cir. 1999). Summary judgment is appropriate if the

3

evidence before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## DISCUSSION

In Deni Assoc. of Florida, Inc. v. State Farm & Cas. Ins. Co., 711 So.2d 1135 (Fla. 1998), the Florida Supreme Court, in enforcing pollution exclusions almost identical to the one in this case, reiterated the principle that if the policy language is clear and unambiguous, it must be enforced. Deni cautioned that a court should not "place limitations upon the plain language of a policy exclusion simply because we may think that it should have been written that way." Id. at 1139. In this case, both parties agree that the policy's pollution exclusion clause is unambiguous and that this case is governed by Florida law.

As to the first issue, under Florida law, the district court correctly found that lead is a "pollutant" under the terms of the policy. The district court found that lead is a "pollutant" under the policy because it is a chemical, and the pollution exclusion clause specifically lists "chemicals" in its definition of "pollutants." Moreover, lead is specifically recognized as a pollutant under Florida laws governing pollutant discharge prevention and removal. Fla. Stat. Ch. 376.301(32)

(2000).[1] Consequently, we are satisfied that the district court is correct in finding under Florida law that lead is a pollutant according to the plain meaning of the pollution exclusion clause. See Deni, 711 So.2d at 1141 (finding that the pollution exclusion clause clearly covers ammonia, after referring to a dictionary definition of the substance and to the Federal Clean Air Act).

This Court addressed the identical pollution exclusion clause in West American Ins. Co. v. Band & Desenberg, 138 F.3d 1428 (11th Cir. 1998). The district court had decided West American before the Florida Supreme Court decided Deni. It found that the unambiguous pollution exclusion clause barred coverage for injuries caused by contaminants in the air in a building covered by the policy. West American Ins. Co. v. Band & Desenberg, 925 F.Supp. 758, 761 (M.D. Fla. 1996). After the Florida Supreme Court decided Deni, a panel of this Court affirmed the district court's decision in West American. 138 F.3d at 1428. We conclude that the injury alleged in this case – resulting from the ingesting and

---

[1] See also, the Federal Lead-Based Paint Poisoning Prevention Act, 42 U.S.C. §§ 4822(a)(1) & (c) (1995) (addressing the "hazards of lead based paint poisoning" in existing housing and requiring inspection and disclosure of any lead found in such housing); the Federal Residential Lead-Based Hazard Reduction Act of 1992, 42 U.S.C. § 4851(b)(15) (1995) (defining "lead based paint hazard" as "any condition that causes exposure to lead from lead-contaminated dust, lead-contaminated soil, lead-contaminated paint that is deteriorated or present in accessible surfaces, friction surfaces, or impact surfaces that would result in adverse human health effects . . . ."), 42 U.S.C. § 4851(4) (noting that Congress found that "the ingestion of household dust containing lead released by lead paint is the most common cause of lead poisoning in children"), and 42 U.S.C. § 4852(a) (authorizing federal grants to reduce lead based paint hazards).

inhaling of lead from the old and crumbling paint in a Housing Authority dwelling – clearly arises from the "discharge, dispersal, release, escape, seepage or migration" of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy.

## CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court, granting summary judgment to the Insurance Company and declaring that it is liable for neither indemnification nor the costs of defense incurred by the Housing Authority in the Underlying Suit.

**AFFIRMED.**