OPINION.
Defendant-appellant American States Insurance Company challenges the trial court's order granting summary judgment in favor of intervening plaintiffs-appellees, James and Jeanette Selm. We reverse.
In September 1997, the Selms contracted with James G. Dangel 
Sons Contractors for the remodeling of the kitchen at their home. As part of the agreement, Dangel was to remove the existing vinyl flooring from the kitchen. In October 1997, Dangel began to remove the flooring. Unbeknownst to Dangel, the vinyl flooring contained asbestos.
When Dangel was unable to remove manually all of the vinyl flooring by using a dry-chipping and prying method, he used a floor sander to complete the job. This resulted in the dispersal of friable asbestos-containing dust and debris throughout the Selms' home.
In December 1998, the Selms filed suit against James G. Dangel 
Sons Contractors, James G. Dangel, Sr., James G. Dangel, Jr., Steven C. Dangel, and David J. Dangel (collectively, "Dangel"), claiming that Dangel had negligently removed and sanded their kitchen floor, releasing friable asbestos. Dangel then sought coverage for the lawsuit from American States Insurance Company, pursuant to a liability policy that was in effect at the time that the claims of negligence were asserted. American States denied coverage under a pollution-exclusion clause contained within the policy.
After the denial of coverage, Dangel filed a complaint for declaratory judgment and breach of contract against American States.[1] Eventually the Selms entered into a settlement agreement with Dangel in which Dangel assigned to the Selms its claims for indemnification against American States. The trial court then granted leave to the Selms to intervene as plaintiffs in the declaratory-judgment action to assert their interests as provided under the assignment from Dangel. All parties filed motions for summary judgment.
The trial court ruled that, as a matter of law, the pollution-exclusion clause did not apply to the damage caused by Dangel's removal of the Selms' kitchen floor. The trial court entered summary judgment in favor of Dangel and the Selms. At the same time, the court denied American States' motion for summary judgment. This appeal followed.[2]
In a single assignment of error, American States challenges the trial court's grant of summary judgment in favor of the Selms and the denial of its motion for summary judgment.
 Summary-Judgment Standard
We review the trial court's grant of summary judgment de novo, using the same standard that the trial court applied.[3] Under Civ.R. 56(C), summary judgment is appropriate if the movant has demonstrated that (1) there are no genuine issues of material fact, (2) the movant is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the nonmovant, reasonable minds can only reach a conclusion adverse to the nonmovant.[4]
 Construing the Insurance Contract
It is well established that when the language in an insurance policy is clear and unambiguous, a court must enforce the contract as written and give the words their plain and ordinary meaning.[5] But if the language in the policy is ambiguous, the contract must be construed strictly against the insurer.[6] The rule of strict construction, however, does not permit a court to change the obvious intent of a provision just to impose coverage.[7] And a court cannot create an ambiguity where none exists.[8]
In the review of an insurance policy, the words and phrases within the policy "must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined."[9] An exclusion within an insurance policy must be interpreted as applying only to that which is clearly intended to be excluded.[10]
 The Pollution-Exclusion Clause
The American States insurance policy provided form coverage for commercial general liability. The relevant portions of the policy contained the following:
1. Insuring Agreement.
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or `property damage" to which this insurance does not apply. * * *
2. Exclusions.
This insurance does not apply to:
* * *
f. Pollution
 (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
 (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
 (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
 (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or
 (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:
 (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or
 (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.
* * *
(2) Any loss, cost, or expense arising out of any:
 (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of pollutants; or
 (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.
 Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
This type of pollution exclusion has generally been known as an "absolute pollution exclusion" and was implemented by the insurance industry to eliminate all pollution claims.[11]
The absolute pollution exclusion has been interpreted by many jurisdictions to be clear and unambiguous in precluding coverage for claims arising from pollution.[12]
In this case, the trial court ruled that the pollution-exclusion clause was unambiguous, and that it applied only to preclude coverage "where an insured's operations address[ed] pollutants directly." The court found that the exclusion "d[id] not address redoing a kitchen floor, and where an accidental environmental situation [wa]s incidental to the primary activity." While we agree with the trial court that the exclusion is unambiguous, we hold that the exclusion precluded coverage in this situation.
As noted above, subsection (c) of the pollution exclusion bars coverage for injury or damage arising out of the release of pollutants that are handled as waste by any insured. The policy defines a pollutant as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." In this case, Dangel's activities in removing the vinyl kitchen flooring resulted in the exposure of friable asbestos-containing materials in the Selms' home.
There is no doubt that asbestos is an irritant or contaminant, and therefore a pollutant under the policy. Asbestos is a hazardous substance under the Comprehensive Environmental Response Compensation and Liability Act.[13] It is a toxic pollutant under the Water Pollution Control Act.[14] It is also a hazardous air pollutant under the Clean Air Act.[15] An entire section of the Ohio Revised Code addresses asbestos abatement.[16]
Courts have specifically found asbestos to be a pollutant under federal law,[17]and have construed it as a pollutant under similar insurance policies.[18] In Board of Regents of the Univ. of Minnesota v. Royal Ins. Co.,[19] the court considered a similar question and answered it in this way:
 We would be doing a disservice to the English language if we were to say that asbestos fibers, which are a health hazard because of their irritant effects on the human body, were not an irritant.
Other courts have addressed an insurer's denial of coverage under similar pollution-exclusion clauses where an insured's removal of vinyl flooring had caused the release of asbestos fibers within a building. In American States Ins. Co. v.Zippro Constr. Co.,[20] the insurer had denied coverage under a similar pollution-exclusion clause. In that case, the court held that asbestos constituted a pollutant as unambiguously defined in the exclusion, and that the asbestos from the vinyl flooring was properly characterized as "waste" within the meaning of the policy. The court concluded that coverage was precluded under the exclusion clause.
In Cincinnati Ins. Co. v. German St. Vincent Orphan Assn.,Inc.,[21] the court found that friable asbestos unquestionably fell within the category of a solid or thermal "irritant" or "contaminant," and that the exclusion clearly applied to the release of pollutants. The court concluded that the asbestos pollutant was released or discharged by the removal of the vinyl flooring as set forth in the policy's exclusion.[22]
 Conclusion
We hold that the pollution-exclusion clause in the American States policy unambiguously precluded coverage for the release of asbestos-containing material by Dangel's use of a sander on the vinyl flooring. Therefore, we reverse the judgment of the trial court and remand this case for the entry of final judgment in accordance with the terms of this decision.
Gorman, P.J., and Sundermann, J., concur.
[1] Initially, Dangel had named Safeco Property and Casualty Insurance Companies as the defendant, but the trial court placed on record an agreed entry dismissing Safeco and substituting American States as the appropriate defendant.
[2] American States has voluntarily dismissed its appeal of the trial court's judgment as it relates to Dangel.
[3] See Doe v. Shaffer (2000), 90 Ohio St.3d 38, 390,738 N.E.2d 1243, 1245.
[4] See Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201, 204, citing Horton v. HarwickChem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.
[5] See Cincinnati Indemnity Co. v. Martin (1999), 85 Ohio St.3d 604,607, 710 N.E.2d 677, 679, citing Hybud Equip. Corp. v.Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665,597 N.E.2d 1096, 1102.
[6] See Faruque v. Provident Life Acc. Ins. Co. (1987),31 Ohio St.3d 34, 38, 508 N.E.2d 949,952; Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660, 665, 710 N.E.2d 1116,1119.
[7] See Hybud, supra.
[8] See Karabin v. State Auto Mut. Ins. Co. (1984), 10 Ohio St.3d 163,167, 462 N.E.2d 403, 406; Gomolka v. State Auto Mut. Ins.Co. (1982), 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347, 1348.
[9] Gomolka, supra.
[10] See Hybud, supra, at 665, 597 N.E.2d at 1102; Moorman v.Prudential Ins. Co. (1983) 4 Ohio St.3d 20, 22, 445 N.E.2d 1122,1124.
[11] McGuirk Sand Gravel, Inc. v. Meridian Mut. Ins. Co. (1996),220 Mich. App. 347, 354, 559 N.W.2d 93, 96.
[12] See id.; McKusick v. Travelers Indemnity Co. (June 8, 2001), Mich.Ct.App. No. 221171, unreported; Longaberger Co. v. UnitedStates Fidelity Guaranty Co. (S.D.Ohio 1998), 31 F. Supp.2d 595;Hybud, supra; Zell v. Aetna Casualty Surety Ins. (1996), 114 Ohio App.3d 677; 683 N.E.2d 1154; Owners Ins. Co. v.Singh (Sept. 21, 1999), Richland App. No. 98-CA-108, unreported;Andersen v. Highland House Co. (May 11, 2000), Cuyahoga App. No. 75769, unreported; W. Am. Ins. Co. v. Hopkins (Oct. 14, 1994), Clark App. No. CA 3108, unreported; Great Northern Ins.Co. v. Benjamin Franklin Fed. Savings Loan Assn. (D.Oregon 1990), 793 F. Supp. 259; Morrow Corp. v. Harleysville Mut. Ins.Co. (E.D.Va. 2000), 101 F. Supp.2d 422; Auto Owners Ins. Co. v.Tampa Housing Auth. (C.A.11, 2000), 231 F.3d 1298; Tippett v.Padre Refining Co. (La. 2000), 771 So.2d 300; South Dakota StateCement Plant Comm. v. Wausau Underwriters Ins. Co. (2000),2000 SD 116, 616 N.W.2d 397.
[13] See Section 9602, Title 42, U.S.Code.
[14] See Section 1317, Title 33, U.S.Code.
[15] See Section 7412, Title 42, U.S.Code.
[16] See R.C. Chapter 3710.
[17] See, e.g., United States v. Nicolet, Inc. (E.D.Pa. 1989),712 F. Supp. 1205; Benjamin Franklin Fed. Savings Loan Assn.,supra.
[18] See, e.g., Board of Regents of the Univ. of Minnesota v.Royal Ins. Co. of America (Minn. 1994), 517 N.W.2d 888; UnitedStates Fidelity Guaranty Co. v. Wilkin Insulation Co. (1991),144 Ill.2d 64, 578 N.E.2d 926; Cincinnati Ins. Co. v. German St.Vincent Orphan Assn., Inc. (July 24, 2001), Montgomery App. No. E.D. 78552, unreported; American States v. Zippro Constr. Co. (1995), 216 Ga. App. 499; 455 S.E.2d 133.
[19] (Minn. 1994), 517 N.W.2d 888.
[20] See Zippro, supra.
[21] See German St. Vincent Orphan Assn., Inc., supra.
[22] The court went on to hold that a floor scraper was a "vehicle" and therefore a "specified cause of loss" under the policy, and that an ambiguity existed as to whether coverage was provided for damage resulting from the vehicle or whether it was precluded under another policy limitation. No such provision exists in the present case.