**UNITED STATES FIRE INSURANCE COMPANY, Plaintiff–Appellee, Cross–Appellant,**

v.

**CITY OF WARREN, Defendant–Appellant/Cross–Appellee.**

Nos. 02–1066, 02–1082 and 02–1085.

United States Court of Appeals, Sixth Circuit.

Dec. 23, 2003.

Michael H. Whiting, Christopher E. Le-Vasseur, Stark, Reagan & Finnerty, Troy, MI, for Plaintiff–Appellee Cross–Appellant.

Christina A. Ginter Kitch, Drutchas, Wagner, DeNardis & Valitutti, Detroit, MI, Timothy S. Groustra, Kitch, Drutchas, Wagner, Mt. Clemens, MI, for Defendant–Appellant Cross–Appellee.

BEFORE: BATCHELDER and ROGERS, Circuit Judges; and RUSSELL,* District Judge.

* The Honorable Thomas B. Russell, District Judge, United States District Court for the

BATCHELDER, Circuit Judge.

Several residents of the City of Warren ("Warren") suffered property damage when the city's sewage system backed up and spilled into their homes. Under a reservation of right to decline coverage because the policy contained an absolute pollution exclusion, plaintiff United States Fire Insurance Company ("U.S.Fire"), Warren's commercial general liability insurance carrier, defended the city in a class action and several other lawsuits filed in state court by property owners seeking to recover for the damage from the sewage backup. When Warren eventually settled with the plaintiffs, U.S. Fire paid the settlement amounts, reserving its right to seek reimbursement for those amounts and the costs incurred in defending the actions. U.S. Fire then brought this action in diversity against Warren seeking a judgment that it is not liable for the claims that are the subject of the state court actions and demanding reimbursement for the amounts U.S. Fire had paid under the settlement and for its costs in defending the actions. The district court, on cross-motions for summary judgment, held that the pollution exclusion relieved U.S. Fire of liability for property damage arising from the sewage spills, awarding judgment to U.S. Fire in the amount of $1,575,000 plus costs "in accordance with Fed. R.Civ.P. 54(d)(1)." The court further ruled that Warren could not raise the affirmative defense of estoppel for the first time on summary judgment, and denied a post-judgment motion filed by Warren to amend the judgment, amend its affirmative defenses, or both, as well as a post-judgment motion by U.S. Fire seeking attorney's fees and prejudgment interest. We now affirm the judgment of the district court, except on the issue of prejudgment interest, to which we hold U.S. Fire is entitled under Michigan law.

## I

Heavy rains in February 1998 caused a backup of sewage in Warren's system, and some of this sewage entered into and damaged multiple residences. Affected property owners filed a class action and other lawsuits in state court against Warren seeking recompense for the property damage and health problems caused by the infiltration of their homes of sewage containing "pathogens, carcinogens and disease carrying organisms including but not limited to HIV viruses, e. coli bacteria, hepatitis (all strains), [and] other bacteria." U.S. Fire, which had issued to Warren both primary and umbrella insurance policies covering, among other things, liability arising from bodily injury and property damage, defended Warren in the state court actions, while reserving for itself the right "to decline coverage based upon the pollution exclusion contained in the policies."

Both the commercial general policy and the umbrella policy written by U.S. Fire are subject to a "total pollution exclusion" which provides that U.S. Fire will not cover injuries or property damage arising in whole or in part from "the actual, alleged, or threatened discharge, dispersal, [seepage, migration,] release or escape of 'Pollutants' [at any time]."[1] "Pollutants" are defined as "any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed." *Id.* at 20. Eventually, Warren settled with the plaintiffs for $1,575,000. U.S. Fire paid the judgment

---

Western District of Kentucky, sitting by designation.

1. The language in brackets indicates language differences between the policies.

on behalf of Warren while reserving its right to seek reimbursement from Warren for the judgment paid and costs incurred in defending the suit.

U.S. Fire filed the instant action in diversity against the City of Warren seeking a declaration that it was not liable for the claims in the state court actions due to the pollution exclusion in the insurance policies, and requesting $1,575,000 plus attorneys fees, costs, "and other liabilities incurred in defending the dismissed underlying litigation." [2] Approximately nine months later, in a state court declaratory action brought by Warren against U.S. Fire and another insurance company, Warren filed a motion contending, for the first time in any of the lawsuits arising from the sewage damage, that U.S. Fire should be equitably estopped from relying on the pollution exclusion in the insurance contracts because U.S. Fire had paid out on sewage backup claims in the past. Warren did not, however, seek leave to amend its answer and affirmative defenses in the present federal court action in order to assert equitable estoppel as an affirmative defense.

U.S. Fire filed a motion for summary judgment. In its response/counter-motion for summary judgment, Warren raised for the first time in federal court the affirmative defense of equitable estoppel. The district court granted U.S. Fire's motion, holding that Warren had waived its defense of equitable estoppel by not raising it at an earlier stage in the litigation, and that, pursuant to Michigan law, the "absolute pollution exclusion" present in the insurance contracts between U.S. Fire and Warren was unambiguous and applied to

the sewage leak at issue. The district court awarded U.S. Fire the $1,575,000 that it had paid out in settlement of the state court lawsuits against Warren.

Warren then filed a "motion to alter or amend the judgment pursuant to Fed. R.Civ.P. 59(e), for relief from judgment pursuant to Fed.R.Civ.P. 60(b), and/or to amend the affirmative defenses pursuant to Fed.R.Civ.P. 15(b)," which the district court denied. The court also denied a motion filed by U.S. Fire "for settlement and entry of final judgment," in which U.S. Fire requested that the court increase the amount of its judgment to include additional damages, prejudgment interest, and costs, because U.S. Fire had requested only $1,575,000, but not attorney's fees or prejudgment interest, in its motion for summary judgment.

On appeal, Warren argues that the pollution exclusion is ambiguous, and that the exclusion does not permit U.S. Fire to deny coverage for the sewage incidents. Moreover, Warren argues, the district court erred in holding that Warren had waived its affirmative defense of equitable estoppel, and equitable estoppel does, in fact, prevent U.S. Fire from denying coverage. On cross-appeal, U.S. Fire argues that the district court abused its discretion by failing to award prejudgment interest, as well as attorneys' fees incurred in defense of the state court action, to U.S. Fire.

## II

We review de novo the district court's holding on summary judgment that U.S.

---

**2.** The present action is, as far as we know, the latest suit involving U.S. Fire and Warren arising from the sewage spills in February 1998. Litigation between the parties on this matter has been going on in state and federal court for some time now. Because we are

satisfied of our own jurisdiction, which we have pursuant to 28 U.S.C. §§ 1291 and 1332, and neither party argued in its briefs that we are precluded from considering this case, we will proceed to consider its merits.

Fire is not required to indemnify Warren based upon the pollution exclusion contained in the insurance contracts between the parties. *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 551–52 (6th Cir.2003). Warren argues that the insurance policies are ambiguous, that waste refers "clearly to the leftovers of industrial process and not to natural, biological waste," and that the City had a reasonable expectation that the insurance contracts covered such a common occurrence as sewer backup.

Michigan law, which governs the court's interpretation of the insurance contracts in this diversity action, indicates that U.S. Fire is not liable to cover the sewage damage in this case. In *Allstate Ins. Co. v. Keillor*, 450 Mich. 412, 537 N.W.2d 589 (Mich.1995), the Michigan Supreme Court spoke generally about the interpretation of insurance contracts and exclusion provisions therein:

> An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. Accordingly, the court must look at the contract as a whole and give meaning to all terms. Further, any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy. This Court cannot create ambiguity where none exists.

> Exclusionary clauses in insurance policies are strictly construed in favor of the insured. However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume.

*Id.* at 591 (citations and internal quotations omitted). Moreover, we are to construe ambiguities in the contract in favor of the insured, and "strictly construe[ ] against the insurer exemptions that preclude coverage for the general risk." *Fire Ins. Exch. v. Diehl*, 450 Mich. 678, 545 N.W.2d 602, 606 (Mich.1996) (citations and internal quotations omitted). *But cf. Wilkie v. Auto–Owners Ins. Co. (In re Estate of Wilkie)*, 469 Mich.41, 664 N.W.2d 776 (Mich.2003) (holding that where the terms of a contract are unambiguous, they are *not* strictly construed against the insurer, and that the court should not look to the insured's reasonable expectations of what risks are covered under the contract).

As a matter of contractual interpretation, we think that the pollution exclusion contained in the contracts between Warren and U.S. Fire is unambiguous, and clearly pertains to the escape of sewage waste onto the property of the Warren homeowners. The influx of sewage into the homes of various Warren residents constituted an "escape" of waste water and sewage. Moreover, regardless of whether sewage is considered "traditional" environmental pollution of the industrial sort, we think that it is composed of "solid, liquid, [or] gaseous ... irritant[s] or contaminant[s], including ... waste." The sewage that escaped falls squarely under the definition of "pollutant," and the pollution exclusion therefore applies to exclude coverage under the U.S. Fire policies for these claims. Michigan case law supports this interpretation.

In *McGuirk Sand and Gravel, Inc. v. Meridian Mut. Ins. Co.*, 220 Mich.App. 347, 559 N.W.2d 93 (Mich.Ct.App.1996), the Michigan Court of Appeals held that an insurance contract that excluded coverage for damage "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." *id.* at 95,

was unambiguous. The court noted that while there was no appellate court authority in Michigan at that time interpreting absolute pollution exclusions, such exclusions are, in general, "unambiguous and operate to exclude coverage for all claims alleging damage caused by pollution." *Id.* at 96–97.

Distinguishing our decision in *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178 (6th Cir.1999), in which we implied "that a pollution exclusion clause in a [commercial general liability] insurance policy applies only to injuries caused by traditional environmental pollution," *id.* at 1180, the Michigan courts have recently made it clear that pollution exclusion provisions in insurance contracts *do* cover more than just "traditional" environmental pollution. In *McKusick v. Travelers Indemnity Co.,* 246 Mich.App. 329, 632 N.W.2d 525 (Mich.Ct. App.2001), the court wrote,

> [a]lthough we recognize that other jurisdictions have considered the terms "discharge," "dispersal," "release," and "escape" to be environmental terms of art, thus requiring the pollutant to cause traditional environmental pollution before the exclusion is applicable, we cannot judicially engraft such limitation. This Court must enforce the insurance policy in accordance with its terms as interpreted in light of their commonly used, ordinary, and plain meanings.

*Id.* at 531.

This court sitting in diversity must do the same. The pollution exclusion in Warren's contracts with U.S. Fire clearly applies to the events at issue in this case, and Warren is not entitled to coverage under its policies with U.S. Fire for damage caused by the escape of waste from the sewer system.

## III

Warren, which asserted its defense of equitable estoppel for the first time in its response to U.S. Fire's motion for summary judgment, argues that the district court should have allowed it to raise that defense because U.S. Fire has not shown that it would have suffered unfair surprise or prejudice by addressing the defense at the summary judgment stage of the litigation. We treat "legal theories first raised in [a party's] response to a motion for summary judgment as an implicit motion to amend the complaint when all of the relevant facts had previously been pled." *Super Sulky, Inc. v. United States Trotting Ass'n,* 174 F.3d 733, 740 (6th Cir. 1999). We will do the same here–although the relevant facts upon which Warren could base a claim for equitable estoppel may not have been pled in this instance– and will consider the district court's refusal at summary judgment to entertain Warren's estoppel defense in conjunction with Warren's post-judgment motion to amend its complaint.

In its motion, Warren invoked Federal Rules of Civil Procedure 15, 59, and 60. Rule 15 permits a party to amend its pleading "only by leave of the court," which "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 59(e) permits motions to alter or amend a judgment. Under Rule 60, "the court may relieve a party ... from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1).

We review the district court's holdings with respect to Rule 15(a) and Rule 60(b) motions for abuse of discretion. *Super Sulky,* 174 F.3d at 740 (Rule 15); *Tareco Props., Inc. v. Morriss,* 321 F.3d 545, 548 (6th Cir.2003) (Rule 60(b)). "[W]hen a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, we conduct

a de novo review using the same legal standard employed by the district court." *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 454–55 (6th Cir.2003). Here, however, because we treat Warren's estoppel theories, raised initially at the summary judgment stage, as a motion to amend the complaint, and such motions are reviewed for an abuse of discretion, we will review its Rule 59 motion for abuse of discretion. *See Super Sulky,* 174 F.3d at 740; *see also Smith v. Sushka,* 117 F.3d 965, 969 (6th Cir.1997) (reviewing district court's consideration on summary judgment of a tardily-raised affirmative defense for an abuse of discretion).

■ We do not think that the district court abused its discretion in holding that Warren waived its affirmative defense of equitable estoppel. In *Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818 (6th Cir.1990), the defendants did not plead the defense of accord and satisfaction in their answer, but instead waited until summary judgment to raise that defense. *Id.* at 820. Noting that "the defendants waited almost a year before filing their answer and almost nineteen months before raising the issue of accord and satisfaction in their motion for summary judgment," we held that "to allow the defendants to raise this affirmative defense initially at the summary judgment motion would violate Rule 8(c) and unfairly prejudice the plaintiff." *Id.* at 824. While the district court in the instant case recognized that under *Smith v. Sushka* it *could* permit Warren to raise its affirmative defense for the first time on summary judgment, it noted the similarity of the facts in *Macurdy* to those in the case at hand: Warren waited almost six months from the time the suit was filed to set forth its answer and more than thirteen months before it raised its equitable estoppel claim.

Warren argues that we should amend the district court's judgment and allow Warren to raise its affirmative defense because U.S. Fire did not claim that it would be unfairly surprised or prejudiced if Warren were permitted to raise its defense, and that U.S. Fire was on notice that Warren might assert such a defense because Warren had asserted equitable estoppel in a state court action that involved both parties (as well as others) but different claims. While we agree that U.S. Fire was on notice that Warren *might* present such a defense in federal court, the fact that Warren presented the defense in state court but did not do so in federal court could have led U.S. Fire reasonably to believe that Warren had made a conscious decision *not* to raise the defense in federal court. And even if U.S. Fire did not claim before the district court that it would suffer prejudice if it had to respond to the estoppel defense, Warren has not offered any explanation for its own tardiness. "[I]n the post-judgment context, we must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment." *Morse v. McWhorter,* 290 F.3d 795, 800 (6th Cir.2002). The movant in this case has no such explanation, and has not shown that it even made a good faith effort to comply with the standard procedure for raising affirmative defenses. The district court did not abuse its discretion by denying Warren's attempts to raise tardily its affirmative defense of equitable estoppel.

## IV

After the district court granted summary judgment in favor of U.S. Fire, awarding it $1,575,000, U.S. Fire moved for "settlement and entry of judgment," and requested that the district court add to its total award both attorneys' fees for

defending Warren in the state court actions, and prejudgment interest on the entire amount. The district court, analyzing U.S. Fire's motion as one made under Rule 59(e), determined that there was no intervening change in controlling law or new evidence that would warrant granting the Rule 59(e) motion, nor was there a need to correct a clear error of law or prevent a manifest injustice. Moreover, the court held that it was entitled to rely upon U.S. Fire's brief in order to define the scope of the issues at bar, and noted that it had given U.S. Fire exactly what U.S. Fire had requested in its brief.

In general, we review a district court's ruling on a Rule 59(e) motion for an abuse of discretion. *Northland Ins. Co.,* 327 F.3d at 454. "Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. American Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999) (citations omitted).

■ The district court did not abuse its discretion by refusing to grant attorneys' fees to U.S. Fire. While U.S. Fire presents some case law indicating that the district court *could* have awarded attorneys' fees, it does not point to any law that *requires* the district court to do so. Nor does U.S. Fire plead that it has come across newly-discovered evidence or a change in law that would affect the issue. U.S. Fire is left, therefore, with demonstrating that granting its Rule 59(e) motion is necessary to prevent a manifest injustice. While U.S. Fire's complaint demanded reimbursement for attorneys' fees from the *Grabowski* action, its brief in support of summary judgment in the district court addressed only reimbursement of the $1,575,000 it paid on Warren's behalf. The denial of the Rule 59(e) motion does not

work a manifest injustice in this instance, and the district court did not abuse its discretion in refusing to re-open the judgment in order to entertain arguments on attorneys' fees.

■ We are, however, persuaded by U.S. Fire's argument that the district court was required to award U.S. Fire prejudgment interest pursuant to Mich. Comp. L. § 600.6013, which provides, in pertinent part, that "[i]nterest is allowed on a money judgment recovered in a civil action." § 600.6013(1) (2003). State law controls questions of prejudgment interest in diversity actions. *See FDIC v. First Heights Bank, FSB,* 229 F.3d 528, 542 (6th Cir.2000).

Michigan courts have consistently held that prejudgment interest under § 600.6013 is required on a money judgment: "The purpose of this statute is to compensate the prevailing party for loss of use of the funds awarded as a money judgment and to offset the costs of litigation. An award of interest is mandatory in all cases to which the statute applies." *Rodriguez v. Farmers Ins. Group,* 251 Mich.App. 454, 651 N.W.2d 428, 432 (Mich. Ct.App.2002); *see also Heyler v. Dixon,* 160 Mich.App. 130, 408 N.W.2d 121, 130 (Mich.Ct.App.1987); *McGraw v. Parsons,* 142 Mich.App. 22, 369 N.W.2d 251, 253–54 (Mich.Ct.App.1985).

Warren attempts to avoid this rule by relying upon the rule's exception, namely, that awarding prejudgment interest is discretionary, not mandatory, in equitable actions. While Warren characterizes the exception accurately, *see, e.g., Saber v. Saber,* 146 Mich.App. 108, 379 N.W.2d 478, 479 (Mich.Ct.App.1985) ("In equitable actions, ... the question of interest is a discretionary matter for the trial court"), its claim that the present action is one in equity because U.S. Fire is seeking the equitable remedy of restitution is unavailing. In

*Michigan Department of Treasury v. Central Wayne County Sanitation Authority,* 186 Mich.App. 58, 463 N.W.2d 120 (Mich. Ct.App.1990), the plaintiff sought and obtained a court order directing the defendant to pay any surveillance fees it owed to the plaintiff. *Id.* at 121. Because the plaintiff had sought not just a judgment declaring defendant responsible for fees, but also sought payment of those fees, the Court of Appeals characterized the order as a "money judgment," thereby bringing it under § 600.6013. *Id.* at 122; *see also Michigan ex rel. Wayne County Prosecutor v. $176,598.00,* 465 Mich. 382, 633 N.W.2d 367, 369 (Mich.2001) ("For the purpose of the judgment interest statute, a money judgment is one that orders the payment of a sum of money, as distinguished from an order directing an act to be done or property to be restored or transferred."). The judgment in this case is for reimbursement, and is undoubtedly a "money judgment" subject to § 600.6013.

Since the district court in the present case was required by Michigan law to award prejudgment interest pursuant to § 600.6013, the court committed a clear error of law in not granting U.S. Fire's Rule 59(e) motion. *See O'Sullivan Corp. v. Duro–Last, Inc.,* No. 99–2190, 2001 WL 345598 at *9–*10 (6th Cir. March 28, 2001) (holding that the district court erred by refusing to grant the prevailing party's Rule 59(e) motion and to award it § 600.6013 prejudgment interest, even when the party had not requested such interest until after trial). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

## V

We therefore REMAND this case to the district court for a determination and award of prejudgment interest, but AFFIRM the judgment of the district court on the other issues before us.